280 A.2d 101.

ROBERT F. MILLS *vs.* FRANCIS HOWARD, *Warden.*

JULY 28, 1971.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

KELLEHER, J. This is a petition for habeas corpus. At the time of its filing, the petitioner was incarcerated in the Adult Correctional Institutions by virtue of a body execution issued by the Family Court pursuant to the provisions of G. L. 1956 (1969 Reenactment) §15-5-16. This section provides that upon the submission of an affidavit by a wife or her attorney alleging the non-performance by a husband of an order calling for the payment of support, alimony or a counsel fee, an execution for the amount due and unpaid shall issue against the husband's goods and chattels and "for want thereof against his body." The petitioner contends this section violates his fourteenth-amendment rights to due process and equal protection of the law. We shall only consider the due process defects of the statute but before doing so, we shall briefly set forth the facts pertinent to this proceeding.

Divorce proceedings were commenced against petitioner on April 17, 1968. A temporary order was entered in the Family Court directing petitioner to pay $15 a week for support of his wife and child. Later, in January 1969, an

interlocutory divorce decree was entered. It provided for a continuance of the $15 weekly support order and the payment of a counsel fee of $150 to the wife's attorney. Sometime in July 1970, the wife filed an affidavit in the Family Court averring that her husband was 113 weeks in arrears on the support payments and that the counsel fee remained unpaid. On September 3, 1970, the Family Court issued an execution against petitioner's goods, chattels and body in the amount of $1,845. The execution was returnable on March 3, 1971. The petitioner was unable to satisfy the sheriff's demand for payment and he was committed in February 1971 to jail. After two petitions for habeas corpus filed in the Family Court proved to be unavailing, the instant petition was filed in this court.[1]

While "due process" is a many faceted term, there can be no doubt that, as these words appear in the fourteenth amendment, they require as a minimum that there be no deprivation of life, liberty or property without a "meaningful" hearing "appropriate to the nature of the case." *Armstrong* v. *Manzo*, 380 U. S. 545, 85 S.Ct. 1187, 14 L.Ed.2d 62; *Mullane* v. *Central Hanover Bank & Trust Co.*, 339 U. S. 306, 70 S.Ct. 652, 94 L.Ed. 865. In all but the most exceptional circumstances, the hearing is to take place before the deprivation occurs. Here, petitioner argues that he should be accorded notice of his wife's motion and opportunity to answer her allegations before he was sent off to jail. We agree.

Section 15-5-16 violates due process because it allows a summary deprivation of one's property or liberty without affording an opportunity to show either his compliance with the court's order or his inability to comply with its terms. Earlier, when the statutory predecessor to §15-5-16

---

[1]On April 7, 1971, we issued an order admitting petitioner to bail in the amount of $2,000 personal recognizance.

was under study, this court observed that the husband is not simply imprisoned for his failure to pay a debt but that, in addition, he has been denied his liberty because he has not complied with the court's decree. *Mowry* v. *Bliss*, 28 R. I. 114, 65 A. 616. Recently, in *State* v. *Costantino*, 107 R. I. 215, 266 A.2d 33, it was shown that, except in a very limited category of contempts, due process now requires that one charged with contempt be advised of the charges against him; have a reasonable opportunity to meet them by way of defense or explanation; have the right to be represented by counsel and have an opportunity to testify and to produce witnesses in his own behalf. In *Costantino*, a court's power to summarily punish for alleged contempt was limited to such disturbing misconduct as taking place in open court within the judge's presence. If we were to consider §15-5-16 as a legislative implementation of the Family Court's authority to enforce its order, it falls short of the minimum due process requirements.

The opportunity for a pre-incarceration hearing becomes all the more significant when it is recalled that one's indigency can be a proper defense to an action seeking enforcement of an order or decree calling for the payment of money. *Sampson* v. *Sampson*, 16 R. I. 456, 16 A. 711. *See also Caswell* v. *Bathrick*, 54 R. I. 30, 169 A. 321.

Minimum due process in the circumstances present in the instant case requires a notice and an opportunity to be heard. The notice must be reasonably calculated to apprise the interested party of the pendency of the motion for the issuance of the execution and an opportunity to present his objection thereto. *See Boddie* v. *Connecticut*, 401 U. S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113; *Cugini* v. *Chiaradio*, 96 R. I. 120, 189 A.2d 798. It is of no consequence that petitioner may have the chance once he has been jailed to vindicate himself. A fundamental thrust of due process

is a chance to be heard before the cell door swings shut. A post-incarceration hearing does not cure the defective due process. *Boddie* v. *Connecticut, supra; Armstrong* v. *Manzo, supra.* Within the past few weeks a Maine statute comparable to our §15-5-16 was faulted because it deprived a husband of his due process rights. *Yoder* v. *County of Cumberland,* (Me.) 278 A.2d 379. Even though the statute in *Yoder* permitted release of a husband upon a showing of his "honest indigency," the court in nullifying the statute declared that the "debtor" was entitled to a hearing on his reasons for "nonpayment" before being placed in prison.

We recognize that there are and will be instances where a compelling public interest will justify summary action which will be subject to a subsequent judicial review. *Sniadach* v. *Family Finance Corp.,* 395 U. S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349; *Berberian* v. *Lussier,* 87 R. I. 226, 139 A.2d 869. The state has a genuine and unquestionable concern that a wife and children be fed, clothed and sheltered by the husband or father charged with such a responsibility. However, this concern does not permit the deprivation of a man's liberty or property before he has been heard on the accuracy of the charge or his reasons for failure to carry out his obligation.

In conclusion, we shall comment on the wife's suggestion that habeas corpus is not the appropriate remedy to secure the release of a prisoner confined for nonpayment of a money order contained in a divorce decree. She refers us to *Mowry, for Writ of Habeas Corpus,* 28 R. I. 242, 66 A.2d 575, and *Asadoorian, for Writ of Habeas Corpus,* 48 R. I. 50, 135 A. 322. In *Lonardo* v. *Langlois,* 98 R. I. 493, 205 A.2d 19, we acknowledged the correctness of the court's observation in *Asadoorian* on the facts of that case but pointed out that in seeking to discharge our constitutional obligation to secure the right of every person to due proc-

ess, we would look to substance rather than form. Here, the petitioner had been whisked away to prison without any hearing as to the extent of his unpaid obligation or the reason therefor. Unlike *Mowry* or *Asadorian,* the petitioner, or rather his counsel, has demonstrated the constitutional pitfalls of the statute which authorized his imprisonment. This being the case, direct and immediate action on our part is required.

The petitioner has been illegally incarcerated and the respondent warden is hereby authorized to discharge him forthwith from his custody.

*Cary J. Coen, Richard B. Tucker* and *John M. Roney,* of Rhode Island Legal Services, Inc., for petitioner.

*Robert R. Afflick* and *David G. Lussier,* for respondent.