**STATE**

v.

**Helayne MANCO.**

**No. 78–425–Appeal.**

Supreme Court of Rhode Island.

Feb. 3, 1981.

Dennis J. Roberts II, Atty. Gen., Jeffrey B. Pine, Sp. Asst. Atty. Gen., for petitioner.

Barry Best, Linda Katz, Rhode Island Legal Services, Inc., Providence, for respondent.

## OPINION

MURRAY, Justice.

This is a petition for support filed by the State of Rhode Island Department of Social and Rehabilitative Services (the department) on behalf of Carl Manco,[1] pursuant to

the Uniform Reciprocal Enforcement of Support Act,[2] against the respondent Helayne Manco, his wife. (Hereinafter the Mancos will be referred to by their first names.)

The petition filed by the department in the Family Court on March 10, 1978, alleged that from November 17, 1966, Helayne had failed to provide support for Carl and his five dependent children. At the time of the filing of the petition, both Carl and Helayne were residents of Warwick, Rhode Island.

The record indicates that Helayne was subsequently served with a summons directing her to appear and show cause why an order for support requested in the petition should not be made. A hearing on the petition was held on May 30, 1978, before a master of the Family Court. At the conclusion of the hearing, during which Carl appeared as the complaining witness for the department, the master rendered his decision which was later incorporated in an order entered on June 13, 1978. The substance of that order provided:

"1. Based upon the finding of the Court, Carl Manco, the petitioner, needs $400.00 per week for the support of the five minor children of the parties.

"2. Based upon the respondent, Helayne Manco's earning capacity of a net weekly wage of $99.00, it was ordered that the said Helayne Manco be ordered to pay to the Registry of the Family Court the sum of $10.00 per week, the first payment to be made on the 5th day of June, 1978.

"3. Both of the parties, viz: Carl Manco and Helayne Manco, are mutually enjoined and restrained from disposing or alienating or in any way encumbering the jointly held real estate of the parties, located at 28 Taplow St., Warwick, R. I.

"4. The State is to record this Order.

---

1. At the time of the filing of this petition Carl was a recipient of Aid to Families with Dependent Children (AFDC) for himself and the Mancos' five children. Prior to receiving this assistance, Carl was required to execute an assignment of any right to support he may have from any person on his own behalf and on behalf of the children for whom he was re-

questing assistance. *See Rhode Island Department of Social and Rehabilitative Services Manual*, Sec. 201(C)(2) at 7 (Rev. ed. 1980).

2. Chapter 11 of Title 15 of the R.I. General Laws 1956 (1969 Reenactment), as enacted by P.L. 1979, ch. 260, § 2.

"5. At the time of the sale of the said realty, no disbursements are to be made until an application is made to the Family Court, at which time the State will be reimbursed.

"This Order is to take precedent [sic] over all other liens that may be on the property with the exception of the mortgage holder and the Federal Government."

Pursuant to G.L. 1956 (1969 Reenactment) § 8–10–3.1, as enacted by P.L. 1977, ch. 68, § 1, Carl sought review of the master's order by a justice of the Family Court. The reviewing justice granted Helayne's motion to be joined as party-appellant. After hearing arguments of counsel on June 27, 1978, the reviewing justice entered an order dismissing Carl's appeal and affirming the master's June 13, 1978 order as far as that order concerned Carl and his interest in the jointly held property.[3] It is from this order that Carl prosecutes the present appeal.

On appeal Carl presents several issues for our consideration. Initially, Carl contends, as he did before the reviewing justice, that the master's order enjoining him from encumbering or disposing of his interest in the jointly held property, in a proceeding to which he was not a party, violated his rights to due process guaranteed by the Fourteenth Amendment to the United States Constitution. We agree.

In contending that the Family Court had sufficient personal jurisdiction over Carl, the department advances two principal arguments. First, the department argues that Carl had assigned his right to support to the department and had agreed to cooperate with the department to ensure that the state received reimbursement for the amount of assistance he received.[4] On the basis of this relationship, the argument continues, when the department instituted this action against Helayne, Carl, in fact, became a party to the proceeding.

The department, citing *Accardi v. Accardi*, 97 R.I. 336, 197 A.2d 755 (1964), reasons further that the Family Court obtained in personam jurisdiction over Carl when he voluntarily appeared as a witness on behalf of the department. For reasons to be discussed, however, these arguments are simply without merit.

Although Carl might have been the assignor of his rights to support from Helayne to the department, neither the act of assignment nor the department's action against a third party based on the assigned right, necessarily confers upon a court personal jurisdiction over the assignor.

■ A party to a judgment is one who is named as such in the record and is properly served with process or enters an appearance. *See O'Brien v. Costello*, 100 R.I. 422, 428, 216 A.2d 694, 698, *cert. denied*, 384 U.S. 988, 86 S.Ct. 1889, 16 L.Ed.2d 1005 (1966). Although Carl's name appears in the petition filed by the department in the Family Court, he was not served with a summons nor did he enter an appearance to defend on the merits of the department's claim against him for reimbursement.

---

3. The reviewing justice entered a separate order concerning Helayne's appeal from the master's order. The reviewing justice vacated that part of the master's order which imposed a lien on Helayne's interest in the jointly held real estate for AFDC payments made to Carl. The reviewing justice, however, did impose a lien against her interest in the property only in the event that she failed to comply with the $10-per-week support order. Helayne, however, has not appealed to us from the reviewing justice's order.

4. The assignment of rights to support, executed by Carl on November 17, 1977, in pertinent part provided:
"For [a]ssistance [p]ayments and care received and to be received, I, Carl J. Manco, * * * residing at 28 Taplow St., hereby assign and transfer unto the State of Rhode Island and Providence Plantations Department of Social and Rehabilitative Services, all the support rights (accrued, pending and continuing) which I have against Helayne F. Manco for the support of my children, for whom I, Carl Manco am applying for or receiving public assistance and care. I agree to cooperate fully with the IV–D Agency to insure that the State of Rhode Island & Providence Plantations Department of Social and Rehabilitative Services receives all monies due in direct relation to the amount of money I receive for the support of myself and children."

Neither can it be said that the assignor, by appearing as witness for the assignee, in any way voluntarily submitted to the jurisdiction of the court. In this regard, the department's reliance on *Accardi v. Accardi*, 97 R.I. 336, 197 A.2d 755 (1964), is misplaced. *Accardi* involved a divorce proceeding in which an attorney representing an out-of-state respondent appeared specially to challenge the Family Court jurisdiction over the respondent. There we said:

> "[A] decree or order for alimony or temporary allowance against a nonresident is void if the court [has] not acquired jurisdiction over him by process served within the state or by his voluntary appearance. And his special appearance by attorney to raise the question of the lack of such jurisdiction is not tantamount to a voluntary appearance resulting in submission to the court's jurisdiction." [Citations omitted] *Id.* at 341, 197 A.2d at 758.

Thus, *Accardi* is factually inapposite to the case at bar.

It is elementary that in order for a court to enter a valid judgment or order against a person, it must first properly obtain jurisdiction over the parties. The classic way of exercising jurisdiction over a person within the court's territorial limits is by service of process upon the individual personally within the territory.

■ In order to vest a court with jurisdiction over a person when it is proceeding in personam, the individual must be given notice, either actual or constructive, of the proceeding instituted against him. As the Supreme Court noted in *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950) and has repeated on many occasions since then:

> "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. *Milliken v. Meyer*, 311 U.S. 457 [61 S.Ct. 339, 85 L.Ed. 278]; *Grannis v. Ordean*, 234 U.S. 385 [34 S.Ct.

779, 58 L.Ed. 1363]; *Priest v. Las Vegas*, 232 U.S. 604 [34 S.Ct. 443, 58 L.Ed. 751]; *Roller v. Holly*, 176 U.S. 398 [20 S.Ct. 410, 44 L.Ed. 520]."

*Id.* at 314, 70 S.Ct. at 657, 94 L.Ed. at 873.

As we noted in another context before, the due process of law guaranteed by the Fourteenth Amendment "require[s] as a minimum that there be no deprivation of life, liberty or property without a 'meaningful' hearing 'appropriate to the nature of the case.'" *Mills v. Howard*, 109 R.I. 25, 27, 280 A.2d 101, 103 (1971) (citing *Armstrong v. Manzo*, 380 U.S. 545, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965); *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950)). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18, 32 (1976).

■ As Carl correctly points out, he complied with the assignment-of-right-to-support agreement and participated only as the complaining witness in the state's proceeding against Helayne in order to establish his and his children's need to be supported by her. Although Carl appeared at the hearing before the master, he did so without counsel; and he did not have the opportunity either to present a case or to be heard in order to raise an objection to the master's order enjoining him from encumbering or disposing of his interest in the property. He in no way appeared to defend the merits of the claim that eventuated against him.

This proceeding was instituted by the state to seek reimbursement from Helayne for AFDC payments made to Carl for himself and his children. At some point, however, the May 30, 1978 hearing was transformed into an adjudication concerning Carl's responsibility to reimburse the state and affecting his interest in the property.

There is nothing contained in the record, nor has anything been shown to us, which indicates that Carl was in any way notified that there was to be an adjudication affecting his property interests during that hear-

ing. It is clear that such action does not comport with the requirements of due process of law guaranteed by the Fourteenth Amendment.

Inasmuch as Carl was not a party to the proceeding below, the Family Court master was without jurisdiction to enter an order binding Carl or affecting his interest in the jointly held property. The imposition of such an order deprived Carl of his property without due process of law, thus contravening the requirements of the Fourteenth Amendment. Accordingly, the order of the master is null and void and the order of the reviewing justice affirming that order cannot stand.

In view of this determination, we need go no further in passing upon Carl's other contentions on appeal.

Carl's appeal is sustained, the order appealed from is vacated, and the papers in this case may be remitted to the Family Court.