**Bruce B. LANDRIGAN**

v.

**William J. McELROY.**

**No. 80–213–Appeal.**

Supreme Court of Rhode Island.

March 16, 1983.

William Y. Chaika, Cranston, for plaintiff.

William J. Toohey, City Sol., Warwick, for defendant.

## OPINION

WEISBERGER, Justice.

The defendant appeals from a Superior Court order granting the plaintiff's motion for a body execution pursuant to G.L.1956 (1969 Reenactment) § 9–25–15. The defendant contends that the body execution statute contravenes the Fourteenth Amendment to the Constitution of the United States. We agree that a portion of the statute is unconstitutional. Accordingly, we sustain the defendant's appeal, vacate the order that granted the plaintiff's motion for a body execution, and remand the case to the Superior Court.

The facts that led to the issuance of the body execution in this case are undisputed. A civil action for assault and battery in the Superior Court resulted in a jury verdict for plaintiff. Judgment was entered in the amount of $42,029.28 plus interest on December 3, 1976. The trial justice denied defendant's motion for a new trial, and defendant appealed to this court. On February 22, 1979, we summarily denied and dismissed defendant's appeal. *Landrigan v. McElroy,* 121 R.I. 949, 398 A.2d 1144 (1979). The plaintiff then requested that the clerk of the Superior Court prepare an execution on the judgment. During March and April of 1979 two executions were issued, but both were returned unsatisfied.

Thereupon, plaintiff moved pursuant to § 9–25–15 for an execution against the body of defendant.[1] Arguing that the body

---

1. General Laws 1956 (1969 Reenactment) § 9–25–15 provides in part:

"An execution, original, alias, or pluries, may issue against the body of a defendant

execution statute was unconstitutional, defendant objected. After a hearing, a Superior Court justice granted plaintiff's motion and on April 29, 1980, ordered that an execution issue against the body of defendant. On the same day, a stay pending appeal to this court was granted.

.The arguments of defendant on appeal can be summarized as follows: (1) section 9–25–15 denies defendant the equal protection of the laws by depriving him of his fundamental right to physical liberty without a compelling state interest, (2) the issuance of a body execution without a prior hearing concerning defendant's ability to pay the tort judgment does not comport with the requirements of procedural due process, and (3) the body execution statute impermissibly creates an irrebuttable presumption. We shall not address the third argument because our determination of defendant's procedural due-process and equal-protection claim is dispositive. Before we address the merits of these claims, however, we must discuss the background of the body execution statute.

*History of the Body Execution Statute*

Imprisonment for debt is an ancient remedy. Note, *Body Attachment and Body Execution: Forgotten But Not Gone,* 17 Wm. ·& Mary L.Rev. 543, 543 (1976); *see* Howe, *Studies in the Civil Law* 205–06 (2d ed. 1905). Indeed, under Roman law creditors could seize and imprison even insolvent debtors and sell them into slavery; if more than one creditor had a claim against a debtor, they could partition the debtor's

body into proportionate shares. *See* Note, *supra,* at 543–44 (citing the law of the Twelve Tables (451–450 B.C.)); *see also* MacKenzie, *Roman Law* 6 (3d ed. 1870). At common law, the writs of *capias ad respondendum* and *capias ad satisfaciendum* authorized the arrest of the debtor at the initiation of the lawsuit or after judgment had been rendered respectively. Vestiges of these procedures existed in colonial America and in the United States during the post-Revolutionary War period.[2] In response to abusive utilization of body execution statutes by creditors during the late-eighteenth and nineteenth centuries, state legislatures enacted statutory and constitutional provisions that limited or entirely prohibited imprisonment for debt. *See generally,* Note, *Imprisonment for Debt: In the Military Tradition,* 80 Yale L.J. 1679, 1679 n. 1 (1971) (listing statutory and constitutional provisions concerning body execution). The Constitution of the State prohibits, absent a strong presumption of fraud, continued imprisonment of a judgment debtor "after he shall have delivered up his property for the benefit of his creditors * * *." R.I. Const., art. I, sec. 11. Moreover, once a contract judgment debtor is imprisoned pursuant to a body execution, he or she may obtain release almost immediately by taking the "poor debtor's oath." *See* G.L.1956 (1969 Reenactment) §§ 10–13–1 to –29.[3] In addition, the creditor for whose benefit the debtor is imprisoned must pay in advance for the prisoner's board. Section 10–10–12.[4]

---

not exempt from arrest in an action * * * sounding in tort in which the title to real estate was not in dispute * * * provided, however, that no execution, original, alias or pluries, shall issue against the body of a defendant unless so ordered by a justice of the superior court or a justice of a district court upon the written ex parte motion of a party named in the action."

2. For a comprehensive history of body execution procedures in England and in the post-Revolutionary United States, see Note, *Present Status of Execution Against the Body of the Judgment Debtor,* 42 Iowa L.Rev. 306, 306–08 (1957), and Note, *Body Attachment and Body*

*Execution: Forgotten But Not Gone,* 17 Wm. & Mary L.Rev. 543, 543–50 (1976).

3. The defendant in this case, however, is a debtor on a tort judgment. He therefore would not be subject to discharge pursuant to the "poor debtor's oath" until six months after imprisonment. *See* G.L.1956 (1969 Reenactment) § 10–13–27.

4. In 1975 the Legislature increased the amount that a creditor must pay in advance for the board of a debtor imprisoned pursuant to a body execution from $4.00 per week to $210.00 per week. P.L.1975, ch. 40, § 1 (amending G.L.1956 (1969 Reenactment) § 10–10–12). In

Section 9–25–15 must be examined in light of these limitations and its own legislative history. The body execution statute originated in the Court and Practice Act of 1905. *See* C.P.A.1905, § 613. The predecessor statutes to § 9–25–15 contained virtually the same language. *Compare* G.L. 1956 (1969 Reenactment) § 9–25–15 *with* G.L.1938, ch. 552, § 11 *and* G.L.1909, ch. 303, § 11. In 1961 the Legislature amended the statute to enable judgment creditors to obtain through ex parte motion execution against the bodies of judgment debtors. Public Laws 1961, ch. 167, § 2 (amending G.L.1956, § 9–25–15). Clearly, this amendment was intended "to deprive judgment creditors of arbitrary power to issue, through their counsel, body executions against judgment debtors and to require submission of the petitions to judicial scrutiny." *Martin v. Estrella,* 110 R.I. 368, 370, 292 A.2d 884, 886 (1972). We have held, however, that once a judgment creditor sets forth one of the statutory grounds for issuance of a body execution, the trial justice has no choice but to grant the creditor's motion. *Id.* As will become evident, our decision today overrules *Martin v. Estrella* to the extent that the court's opinion in that case deprives a trial justice of *any* discretion to deny a motion for a body execution.[5]

*The Constitutional Validity of § 9–25–15*

▇ The defendant bases his equal-protection challenge to § 9–25–15 on the doctrine enunciated by the United States Supreme Court in *Williams v. Illinois,* 399 U.S.

235, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970), and *Tate v. Short,* 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130 (1971). In both cases the Court addressed the constitutionality of imprisoning a defendant beyond the statutorily authorized term solely because the defendant was unable to pay a fine that accompanied his sentence. The Court determined that such imprisonment constituted invidious discrimination in violation of the equal-protection clause. *Tate,* 401 U.S. at 398, 91 S.Ct. at 670–71, 28 L.Ed.2d at 133; *Williams,* 399 U.S. at 242, 90 S.Ct. at 2023, 26 L.Ed.2d at 593. These cases make clear that the state cannot imprison an individual solely because of a lack of money.

The defendant points out that a federal district court relied on *Williams* and *Tate* to strike down, as facially repugnant to the equal-protection clause, the body execution statute of another state. In *Abbit v. Bernier,* 387 F.Supp. 57 (D.Conn.1974), the court found that even though the Connecticut statute did not expressly exclude a preincarceration hearing to determine ability to pay, the state courts implemented the statute without providing for such hearings. *Id.* at 61–62; *see* Conn.Gen.Stat.Ann. § 52–369 (West 1960). Consequently, the court struck down the statute as unconstitutional. 387 F.Supp. at 62. Subsequently, a Connecticut state court found that the *Abbit* court erroneously concluded that court practices in the state did not include a hearing to determine the judgment debtor's ability to pay. *Palumbo v. Manson,* 35 Conn.Supp. 130, 133, 400 A.2d 288, 289–90

---

our opinion, this evinces a legislative intent to discourage the use of body execution as a means for satisfying judgments. We note further that supplementary proceedings in aid of execution are more readily available to assist judgment creditors in obtaining satisfaction. *See generally* G.L.1956 (1969 Reenactment) §§ 9–28–1 to –7; Super R.Civ.P. 69 (both outlining supplementary proceedings in aid of execution). In the words of Professor Kent, "[t]he issuance of a body execution happily has become a rare event." 1 Kent, *R.I.Civ.Prac.* § 69.4 at 495 (1969).

**5.** The same amendatory language that this court construed in *Martin v. Estrella,* 110 R.I.

368, 292 A.2d 884 (1972), underlies the constitutional challenge to the body execution statute in this case. In *Martin* we noted that art. I, sec. 11, of the Rhode Island Constitution prohibits, absent a strong presumption of fraud, continued imprisonment of a judgment debtor "where it shall be established that he has delivered up his property for the benefit of his creditors." 110 R.I. at 369, 292 A.2d at 885 (citing R.I. Const. art. I, sec. 11). The defendant in *Martin,* however, did not contend that § 9–25–15 was unconstitutional under either the State or the Federal Constitution and the court did not address the issue. 110 R.I. at 369, 292 A.2d at 885.

(Super.Ct.1979). Accordingly, the state court upheld the body execution statute by interpreting it as requiring such a hearing. *Id.* at 134, 400 A.2d at 290.[6]

■ The body execution statute at issue in *Abbit* and *Palumbo* was silent concerning a preincarceration hearing to determine the judgment debtor's ability to pay. *See Abbit,* 387 F.Supp. at 62; *Palumbo,* 35 Conn. Supp. at 132, 400 A.2d at 290. The "ex parte" amendment to our statute, on the other hand, implicitly excludes such a hearing. Moreover, this court's interpretation of that amendment in *Martin v. Estrella, supra,* deprives a trial justice of any discretion to deny issuance of a body execution once a creditor sets forth the existence of a statutory ground. We are of the opinion, therefore, that § 9–25–15 is incapable of an interpretation upholding its validity as long as the "ex parte" language is an effective part of the statute.

The body execution statute does not expressly create two classifications of tort judgment debtors, namely, those debtors who are able to pay but refuse to do so and those who are unable to pay. As the Court stated in *Williams,* however, "a law nondiscriminatory on its face may be grossly discriminatory in its operation." 399 U.S. at 242, 90 S.Ct. at 2023, 26 L.Ed.2d at 593 (quoting *Griffin v. Illinois,* 351 U.S. 12, 17 n. 11, 76 S.Ct. 585, 590 n. 11, 100 L.Ed. 891, 898 n. 11 (1956)). By failing to provide for a preincarceration hearing to determine ability to pay, the statute in effect enables only tort judgment debtors who are able to pay to obtain immediate release from imprisonment. These individuals need only comply with the judgments and executions against them. On the other hand, tort judgment debtors who are unable to pay must remain in prison for at least six months. *See* § 10–13–27.[7] They are, therefore, incarcerated solely because of their lack of money. This disparate treatment is precisely the type of invidious discrimination prohibited by the Court in *Williams* and *Tate. See Tate v. Short,* 401 U.S. at 398, 91 S.Ct. at 670–71, 28 L.Ed.2d at 133; *Williams v. Illinois,* 399 U.S. at 242, 90 S.Ct. at 2023, 26 L.Ed.2d at 593. *See generally* Note, *Vermont's Close Jail Execution: Physical Incarceration of the Wilful and Malicious Tortfeasor,* 3 Vt.L.Rev. 165, 184–89 (1978) (discussing equal-protection aspects of *Tate* and *Williams* ).

■ Moreover, imprisoning a tortfeasor who is unable to pay a judgment does not implement the governmental interest in enforcing judgments and executions. Supplemental proceedings in aid of execution more effectively further this interest because such proceedings enable a creditor to obtain satisfaction of a judgment on an installment payment basis. *See* G.L.1956 (1969 Reenactment) §§ 9–28–3 to –7. In short, imprisoning debtors who are unable to pay judgments against them does not have a rational connection with enforcement of the obligation to pay.[8] This court will not attri-

---

**6.** Subsequently, the Connecticut Legislature repealed the body execution statute. 1981 Conn. Acts 81–410, § 14 (repealing Conn.Gen.Stat. Ann. § 52–369 (West 1960)).

**7.** Certain poor debtors may obtain post-body execution release almost immediately by taking the "poor debtor's oath." *See* G.L.1956 (1969 Reenactment) §§ 10–13–1 and –2. We do not limit our opinion, however, to the application of the body execution statute only to tort judgment debtors. The requirements of equal protection and due process apply equally to the application of the body execution statute to debtors who are unable to pay nontort judgments.

**8.** The defendant contends that the body execution statute interferes with his "fundamental right" to physical liberty. He argues, therefore, that we must subject the statute to "strict scrutiny." *See Shapiro v. Thompson,* 394 U.S. 618, 638, 89 S.Ct. 1322, 1333, 22 L.Ed.2d 600, 617 (1969). This reasoning would require us to apply strict scrutiny to any law authorizing imprisonment whenever such a law is challenged as violative of the equal-protection clause. We therefore reject the proposition that the decisions of the United States Supreme Court in Williams v. Illinois, *399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970), and* Tate v. Short, *401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130 (1971) are based upon such an application of "strict scrutiny" analysis. Rather we inter-*

bute to the Legislature an intent that would result in absurdities or would defeat the underlying purpose of legislation. *See, e.g., Beaudoin v. Petit,* R.I., 409 A.2d 536, 540 (1979); *Manson v. Bowerman Bros., Inc.,* 95 R.I. 425, 435, 187 A.2d 772, 778 (1963).

We hold that the ex parte hearing provision of the 1961 amendment to § 9–25–15 is unconstitutional as violative of the equal-protection clause. We assume, however, that the Legislature would prefer that this court strike down only the unconstitutional portion if such a construction is reasonably possible. Accordingly, we shall sever the ex parte hearing portion of the 1961 amendment to § 9–25–15 from the rest of the statute, strike down this element as unconstitutional, and interpret the remaining portion of the statute as requiring a hearing to determine the judgment debtor's ability to pay. Before we delineate the requirements of this hearing, we must discuss our basis for severing the unconstitutional language of the 1961 amendment to § 9–25–15 from the statute as a whole.

*Separability*

It is settled that "this court must construe a duly enacted statute to be constitutional if such a construction is reasonably possible." *Jamestown School Committee v. Schmidt,* R.I., 405 A.2d 16, 19 (1979); *J.M. Mills, Inc. v. Murphy,* 116 R.I. 54, 71, 352 A.2d 661, 670 (1976); *see* 2A Sutherland, *Statutes and Statutory Construction* § 57.-24 at 456 (4th ed. 1973) (citing *Murphy v. Director of Public Works of Rhode Island,* 103 R.I. 451, 238 A.2d 621 (1968)). Moreover, a court may hold a portion of a statute unconstitutional and uphold the rest when the unconstitutional portion is not indispensable to the rest of the statute and can be severed without destroying legisla-

tive purpose and intent. *Baffoni v. Rhode Island Department of Health,* 118 R.I. 226, 235–36, 373 A.2d 184, 189 (1977); *Chartier Real Estate Co. v. Chafee,* 101 R.I. 544, 556, 225 A.2d 766, 773 (1967). This principle applies despite the absence of a savings clause in a statute because "the authority of a court to eliminate invalid elements of an act and yet sustain the valid elements is not derived from the Legislature, but rather flows from powers inherent in the judiciary." 2 Sutherland, § 44.08 at 350. In exercising this authority, however, we recognize that legislative intent is the decisive factor. *See Rhode Island Federation of Teachers v. Norberg,* 630 F.2d 855, 863 (1st Cir.1980). The test for determining the separability of portions of a statute is "whether, at the time the statute was enacted, the legislature would have passed it absent the constitutionally objectionable provision." *Scheinberg v. Smith,* 659 F.2d 476, 481 (5th Cir.1981).

As our review of the legislative history of § 9–25–15 indicates, the statute underwent only minor revision from its inception in 1905 until its 1961 amendment. Clearly, the Legislature that enacted the body execution statute would have passed it absent the unconstitutional portion. Moreover, severance of the unconstitutional portion of the amendatory language is consistent with the underlying purpose of the statute and the intent of the Legislature when it amended the statute.[9] The purpose of § 9–25–15 is to compel payment from judgment debtors who are able to satisfy judgments against them. The 1961 amendment was intended to provide judicial supervision over the issuance of body executions. *See Martin v. Estrella,* 110 R.I. at 370, 292 A.2d at 885. By striking down the portion of the

pret these decisions as establishing that a state violates the equal-protection clause under any analytical standard when it incarcerates citizens solely because of their economic status.

**9.** A court may uphold a statute even though an amendment or a portion of an amendment to the statute is invalid. 1A Sutherland, *Statutes and Statutory Construction* § 22.37 at 206 (4th

ed. 1972). Although we could sever the unconstitutional language from the 1961 amendment to § 9–25–15 solely on this basis, we are of the opinion that it is necessary to explain fully the underlying purpose of the statute and to explain why the severance of the unconstitutional portion of the amendment is consistent with that purpose.

amendment that specifies an ex parte rather than an adversary hearing and upholding the rest of the statute we effectuate both legislative goals. Henceforth, the body execution statute will be enforced only against judgment debtors who fail to demonstrate in a preincarceration hearing that they are unable to pay the judgment against them. The issuance of body executions will therefore be subject to more meaningful judicial scrutiny with the benefit of an adversary rather than ex parte hearing as a condition precedent.

*Due-Process Requirements*

■ Although the equal-protection clause serves as the basis for our decision, we address defendant's due-process claim in order to establish guidelines for future implementation of the body execution statute. Arguably, defendant lacks standing to raise the due-process issue because he was granted a hearing prior to the issuance of the body execution. *See State v. Sharbuno,* 120 R.I. 714, 719, 390 A.2d 915, 919 (1978). As we have indicated, however, this court's decision in *Martin v. Estrella, supra,* made it futile for defendant to challenge the issuance of the body execution at the hearing. We therefore find that defendant has standing to claim a due-process violation.

■ Procedural due process requires that no deprivation of life, liberty, or property should occur without a prior hearing. *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 569–70, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548, 556 (1972); *Montaquila v. St. Cyr,* R.I., 433 A.2d 206, 212 (1981). This hearing must be conducted "at a meaningful time and in a meaningful manner." *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62, 66 (1965); *see State v. Manco,* R.I., 425 A.2d 519, 522 (1981). Further, the hearing must be "appropriate to the nature of the case." *Mullane v. Central Hanover Bank and Trust Co.,* 339 U.S. 306, 313, 70 S.Ct. 652, 657, 94 L.Ed. 865, 873 (1950).

In *Mills v. Howard,* 109 R.I. 25, 28, 280 A.2d 101, 104 (1971), we noted that "[t]he opportunity for a pre-incarceration hearing becomes all the more significant when it is recalled that one's indigency can be a proper defense to an action seeking enforcement of an order or decree calling for the payment of money." This determination was made in the context of a due-process challenge to the Family Court's issuance of a body execution pursuant to G.L.1956 (1969 Reenactment) § 15–5–16. Although this statute and its successor, G.L.1956 (1981 Reenactment) § 15–5–16.3, apply only to the enforcement of orders awarding alimony and child support, their implementation has effects not unlike those caused by the implementation of the statute under review in this case. The opinion of the court in *Mills v. Howard* is therefore very persuasive.

■ Accordingly, we hold that due process requires that a hearing take place after reasonable notice to determine the defendant's ability to pay the judgment against him prior to the issuance of a body execution. At this hearing, the defendant has the burden of raising the issue of ability to pay and of demonstrating such an inability by a fair preponderance of the evidence. *See State v. Byrnes,* R.I., 404 A.2d 495, 498 (1979); *see also Palumbo v. Manson,* 35 Conn.Supp. at 134, 400 A.2d at 290; *cf. In re Harris,* 69 Cal.2d 486, 490, 446 P.2d 148, 151, 72 Cal.Rptr. 340, 343 (1968) (due-process clause requires that civil defendant, imprisoned through mesne process, be notified of right to hearing when challenging lawfulness of arrest). If the trial justice determines that the defendant is unable to pay the judgment, he must refuse to issue the body execution. Rather he may order partial payments or take whatever other action is appropriate under the circumstances.

For the reasons stated, the appeal of the defendant is sustained. We vacate the order below which granted the plaintiff's motion for a body execution and remand the case to the Superior Court for proceedings consistent with this opinion.