**GREENWICH BAY YACHT BASIN ASSOCIATES et al.**

v.

**Shirley WASHBURN et al.**

No. 88–30–M.P.

Supreme Court of Rhode Island.

June 26, 1989.

---

John Tarantino, Patricia Rocha, Providence, for plaintiff.

Frank J. Cenerini, Miller, Farrell, Cenerini & Murphy, Alfred Ferrulo, City Sol., Warwick, for defendant.

## OPINION

FAY, Chief Justice.

This case comes before the Supreme Court pursuant to our issuance of a writ of certiorari. The Greenwich Bay Yacht Basin Associates (GBYBA) seeks review of a Superior Court judgment invalidating a zoning ordinance that would have permitted GBYBA to build a proposed structure. We reverse the trial justice's decision, holding a section of the ordinance valid.

This petition is the latest act in GBYBA's six-year endeavor to obtain municipal and state approval of a proposed condominium project in Warwick. The GBYBA intends to develop a residential unit consisting of fifty-two condominiums, with accompanying clubhouse and marina. First GBYBA requested a zoning change from the city of Warwick in order to meet local building regulations. Pursuant to this request, the Warwick City Council enacted ordinance No. 0–83–4 on April 13, 1983.[1] The amendment enabled GBYBA to comply with municipal zoning regulations and changed the designation of the proposed building loca-

---

1. The ordinance provides in pertinent part:
   "SECTION I. The Zoning Map and the Record Book of Lot Classifications which are a part of the Zoning Ordinance of the City of Warwick are hereby amended by changing the classification of the following described premises from Waterfront Business to Planned District Residential (PDR–A7) subject to the stipulations set forth in Section II of this Ordinance.

   Portion of Lot 94 of Asessor's Plat 221 as said plat appeared in the Tax Assessor Office on December 31, 1982, from Waterfront Business to Planned District Residential (PDR A–7), said portion as shown on Attachment A to the application introduced into evidence by the Petitioners."

tion from waterfront business to planned district residential (PDR–A7), subject to certain stipulations.[2]

On March 15, 1983, GBYBA filed an application with the Coastal Resources Management Council (CRMC) to gain required state approval. The GBYBA contends that CRMC represented at all times that the application would be reviewed according to CRMC regulations effective in 1978 (1978 guidelines). In June 1983, however, CRMC promulgated new criteria (1983 guidelines) that prohibited the construction of a marina. The GBYBA then filed a revised application on April 15, 1985. This revision resulted from rulings of other state administrative agencies. Before the start of an October 28, 1985 CRMC subcommittee hearing, the subcommittee chairperson suggested that because of the revision, the application should be reviewed according to the 1983 guidelines. Following the submission of memoranda, the subcommittee issued a decision on December 5, 1985, holding the 1983 guidelines applicable. Thereafter, GBYBA informed the subcommittee that it would not proceed before the administrative agency but would seek relief from the Superior Court.

The GBYBA subsequently filed suit in Superior Court requesting relief from CRMC's action in the form of a writ of mandamus or equitable estoppel. On March 11, 1986, the trial justice issued a decision estopping CRMC from reviewing the proposal under the 1983 guidelines because of CRMC's prior representations to GBYBA. In reaching this conclusion, the trial justice mandated that CRMC review the proposal according to the 1978 guidelines.

On appeal we reversed the Superior Court finding because the trial justice's decision was only based upon affidavits and as a result no opportunity to cross-examine witnesses was presented. *See Greenwich Bay Yacht Basin Associates v. Brown*, 537 A.2d 988 (R.I.1988). We fashioned a remedy ordering GBYBA to appear before CRMC and present evidence why it would be inequitable to proceed under the 1983 guidelines. This matter was presented to CRMC.[3]

At this point, GBYBA renewed its effort to obtain municipal approval by applying to the Warwick building inspector for issuance of a building permit pursuant to section II(1). The building inspector denied the request, determining that the permit could not issue under section II(2) until CRMC approval was obtained. Since CRMC approval had not been granted, the building inspector noted that the prerequisite to the zoning change had not been satisfied.

Pursuant to G.L.1956 (1980 Reenactment) § 45–24–16, GBYBA appealed the building inspector's decision to the Warwick Zoning Board of Review. The board of review sustained the building inspector's determination in a June 23, 1986 decision. Although the city council had conditionally granted a zoning change, the board of review found the change ineffective because GBYBA had not received required CRMC approval.

Following the board's decision, GBYBA returned to Superior Court seeking review pursuant to § 45–24–20. The Superior Court justice determined that section II(1),

---

**2.** The applicable stipulations in the ordinance are as follows:

"SECTION II. Stipulations on said zoning change, said stipulations agreed to by the Petitioners, are as follows:

1. The change of zone classification of the subject property to Planned District Residential A–7 shall revert to a Waterfront Business District zone classification three years from the date of the enactment of this Ordinance unless a building permit for the construction of the project shall have been issued.

2. The change of zone classification is conditioned upon the issuance of all permits required by law from the Rhode Island Coastal Resources Management Council pertaining to the condominium project proposed for said zone.

3. A copy of the State of Rhode Island's water quality certification for the condominium development, as set forth in Petitioner's Exhibit 1 relating to the above condominium project proposed is hereby incorporated by reference and made a stipulation to this Ordinance."

**3.** On April 24, 1989, CRMC concluded that GBYBA's application should be considered under the 1978 guidelines.

which provided for automatic reversion of the property to a designation as waterfront business, was violative of the notice requirement set out in § 45–24–4.1. In addition, the trial justice invalidated conditions in section II, subsections (2), (3), and (5), because under these sections independent discretionary sources could control the continued existence of the ordinance. The trial justice further found that section III, which repeals any conflicting ordinance without notice, was beyond the city council's authority. At that point the trial justice analyzed the zoning ordinance and determined that the city council intended section I to be effective only if the conditions in section II were satisfied. Therefore, the trial justice found that section II was not separate from section I and invalidated the entire ordinance. The GBYBA seeks relief from this ruling.

■■■■■ The GBYBA contends that the Superior Court committed an error of law, or alternatively abused its discretion, by invalidating the entire ordinance. It is well established that a court must ascertain and effectuate legislative intent in construing a statute or ordinance. *Landrigan v. McElroy*, 457 A.2d 1056 (R.I.1983). This is accomplished by examining the language, nature, and object of an ordinance. *Dunne Leases Cars & Trucks, Inc. v. Kenworth Truck Co.*, 466 A.2d 1153, 1156 (R.I.1983); *Paola v. Commercial Union Assurance Companies*, 461 A.2d 935, 937 (R.I.1983). Additionally, when the validity of an ordinance is at issue, a court must, if possible, interpret the ordinance as valid. *Landrigan*, 457 A.2d at 1061. Moreover, a court may hold a portion of an ordinance invalid and uphold the remaining sections if the valid portion is not indispensable and can be severed without destroying the purpose of enactment. *Id.* The test of determining separability of sections of an ordinance is whether at the time the ordinance was enacted, the governing body would have passed it absent the objectionable provision. *Id.*

■■■■■ Initially we find that the trial justice was correct in holding that section II(1), the automatic reverter provision, violates

the notice requirement of § 45–24–4.1. Furthermore, we find that the requirements of section II, subsections (2), (3), and (5), were properly invalidated. These provisions could allow discretionary sources to control the life of the ordinance. Additionally these requirements were superfluous because the conditions are required by state law.

■■■■■ Although section II of the zoning ordinance was properly invalidated, we believe that a review of the validity of section I as separate and distinct from section II is necessary. The Warwick City Council enacted section I in order to change the zoning of the proposed condominium complex from waterfront business to planned district residential. The zoning change, on behalf of GBYBA, would allow the project to comply with municipal zoning regulations.

Specifically, the Warwick City Council did not affirmatively indicate that the stipulations were an integral and inseparable part of the zone change. The city council could have made specific reference to the stipulations if it intended to enact the zone change only after satisfying the stipulations in section II. The city council's failure to include such language evidences its intent that the zone change should stand independent of the stipulations. We believe that the Warwick City Council would have enacted section I even absent the stipulations in section II. We therefore hold that the language of the ordinance indicates that section I is valid and independent of section II. In reaching this conclusion, however, we note that GBYBA must still receive CRMC approval under the 1978 guidelines.

For the reasons stated, the petition for certiorari is granted, the judgment of the trial justice is quashed, and the papers in this case are remanded to the Superior Court with our opinion endorsed thereon.