## No. 13,077.

HERSHEY ET AL. *v.* PEOPLE EX REL. JOHNSON.

(12 P. [2d] 345)

Decided May 31, 1932.

Mr. Thomas A. Mapes, Mr. Karl C. Brauns, Mr. Joseph P. O'Connell, for plaintiffs in error.

Mr. Carle Whitehead, Mr. Albert L. Vogl, Mr. F. A. Wachob, for defendant in error.

*En Banc.*

Mr. Justice Butler delivered the opinion of the court.

The people, on the relation of Henning Johnson, obtained a judgment against Reuben W. Hershey and Thomas W. Clennan and the sureties on their separate bonds. The defendants below seek a reversal of that judgment.

Hershey was the manager of safety and excise and ex officio sheriff of the City and County of Denver and Clennan was the warden of the county jail.

In an action founded upon tort, Johnson recovered judgment for $3,402.76 against one D. M. Roll. Pursuant to C. L. §§5964, 5965, the judgment directed the issuance

of a body execution and that Roll be committed thereunder to the county jail for one year, unless the judgment was sooner paid. Roll was committed to jail on September 10, 1929. On May 2, 1930, though the judgment was not paid, Hershey and Clennan released Roll from custody.

█ 1. Whether or not such release was lawful depends upon whether or not the act of 1911, relating to deductions from the time of imprisonment, applies to one confined under a body execution issued by virtue of C. L. §§5964, 5965. Section 5 of the act of 1911, being C. L. §8884, provides for the performance of labor by those confined in the county jail under sentence. Section 1 of that act, being C. L. §8880, provides: "That every person who is now, or may hereafter be, sentenced to and imprisoned in any county jail of this state or to pay a fine or fines and costs or either or all thereof, and who shall perform faithfully the duties assigned to him, or her, during his, or her, imprisonment therein, shall be entitled to a deduction from the time of his, or her, sentence, of two days in each month; * * *." Section 8 of that act, being C. L. §8887, provides for a deduction of additional time upon specified conditions. Are those provisions applicable to one confined under a body execution? We are forced to the conclusion that they are not.

█ The title of the act of 1911 is "An act concerning prisoners confined in the county jails under sentence, and providing for the parole of such prisoners for good conduct and work." "The term judgment is more usually applied to civil, and sentence to criminal, proceedings." 3 Bouvier's Law Dictionary. The word "sentence" means, "as commonly used, the decree or order by which the court imposes punishment or penalty upon a person found guilty, or the punishment or penalty so imposed." Webster's New International Dictionary. The Standard Dictionary thus defines the word "sentence": "Law. A final judgment, especially in a criminal case; the penalty pronounced upon a person convicted of crime." The

word "parole," occurring in the title of the act, is another indication that the act is confined to prisoners sentenced in criminal proceedings. The purpose of the body execution is to coerce the payment of the judgment by keeping the defendant in confinement for the prescribed time, unless he pays the judgment before the expiration of that time. To release him from prison on parole would defeat, or tend to defeat, that purpose. Section 3 of the act of 1911, being C. L. §8882, provides: "That for the purpose of this act, whenever any such persons confined in the county jail shall be sentenced under several convictions, with separate sentences, they shall be construed as one continuous sentence." That indicates clearly that those persons who come within the provisions of the act are those only who have been sentenced in criminal cases. "Conviction" has been thus defined: "Law. Act of convicting a person, or state of being convicted, of a criminal offense; * * *." Webster's New International Dictionary. Section 4 of the act of 1877, being C. L. §8876, concerning jails, requires persons "committed" for contempt or upon civil process to be kept in rooms separate from those in which prisoners "convicted and under sentence" shall be confined. Our Body Execution Act (C. L. §5965) provides that the defendant shall be "committed," not sentenced, to jail. Furthermore, it provides (same section) that "any person committed to jail by such process shall be released therefrom at once, upon the payment of such judgment." Payment, and that alone, entitles such person to a release before the expiration of the time of confinement fixed by the court. The body execution act was passed for the benefit of the execution creditor; and, upon complying with the provisions of C. L. §5966, relating to the payment of costs, charges and expenses, he is entitled to have the defendant detained in prison for the full time specified in the judgment, unless before the expiration of that time the defendant pays the judgment.

It is our opinion that sections 8880 and 8887,

Compiled Laws, relating to deductions from the time of sentence, have no application to a person confined under body execution, that Roll's release was without legal warrant and was in violation of Johnson's rights, and that Johnson was entitled to recover judgment in this action.

2. There remains for consideration the question of the amount recoverable in the present action.

The judgment was for $3,402.76, being the full amount of the judgment obtained by Johnson against Roll ($2,500), together with costs and interest. Where an officer who has a prisoner in charge voluntarily permits him to escape or to go at large, the escape is customarily referred to as a voluntary escape; where the prisoner escapes through the officer's negligence, it is called a negligent escape. At common law, in actions for the escape of one confined under final process, the execution creditor's sole remedy was an action on the case, and the amount recoverable was limited to the damages actually sustained. The presumption was that the creditor lost the entire debt by the escape; but the poverty or insolvency of the debtor could be given in evidence in mitigation of damages, "to show that the plaintiff could have recovered little or nothing of his debt, for it would be a solecism to say that the creditor was as much injured by the escape of a bankrupt or squalid beggar, as of a wealthy but obstinate debtor." 10 R. C. L. 599, 600. That is the present law, except where changed by statute. 50 C. J. 357. Counsel for Johnson contend that the law as to voluntary escape was changed by certain ancient English statutes, and that our Legislature has adopted those statutes as the law of this state.

Section 6516, Compiled Laws, provides: "The common law of England, so far as the same is applicable and of a general nature, and all acts and statutes of the British parliament, made in aid of or to supply the defects of the common law prior to the fourth year of James the First," with certain exceptions not important here, "and

118

which are of a general nature, and not local to that kingdom, shall be the rule of decision, and shall be considered as of full force until repealed by legislative authority." The statutes of Westminster 2, c. 11, and 1 Richard 2, c. 12, enacted: "If, after judgment, a sheriff permits a debtor to escape, who is charged in execution for a certain sum, the debt immediately becomes his own, and he is compelled to satisfy the whole amount." After the passage of those statutes the creditor, at his election, could bring an action on the case against the officer, in which action he could recover only the damages actually sustained, or he could sue him in debt under those statutes and recover the whole debt.

It is said that those ancient statutes have been adopted as the law of this state, and that they fix the amount recoverable in this action. Assuming, but not deciding, that those statutes are in force in Colroado, we do not think that this case comes within their terms.

There was testimony to the effect that in releasing Roll the officers acted in good faith and under the advice of the attorney general and of the city attorney of Denver. From the contention made here, it is evident that it was believed by all of them that under the act of 1911, relating to deductions from the time of imprisonment, Roll was entitled to be discharged from custody; and it is clear that in releasing him the officers believed that they were performing their statutory duty. Such advice and their good faith, however, did not relieve them from liability; but in such circumstances the escape was a negligent escape, and such escapes do not come within the statutes, quoted above, making the debt the debt of the officer and charging him with liability for the full amount thereof. Our attention has not been called to any decision holding that, in the circumstances presented here, the debt becomes the debt of the officer. Such a decision, if any there were, would be so unreasonable, so harsh and unjust, that we would not be inclined to follow it. We are not without precedent in holding

that the escape, in such circumstances, is a negligent, not a voluntary, escape. In *Meehan v. State,* 46 N. J. L. 355, the warden of a jail was sentenced for voluntarily permitting a prisoner to escape. At the request of the prisoner, the warden procured the prisoner's written discharge from the committing magistrate, and thereupon, believing such discharge to be lawful, suffered the prisoner to go at large. The discharge was a nullity, for the magistrate had no authority to grant it. It was held that the escape was a negligent, not a voluntary, escape. And in that case the court said that in 25 Year Book (3d Ed.) p. 39, where a justice of the peace bailed a person not bailable by law, and the jailor, acting under such illegal order, discharged the prisoner, it was held that he was liable for only a negligent escape.

All the authorities hold that, in an action for a negligent escape, the recovery is limited to the damages actually sustained.

As this case does not come within the provisions of the ancient statutes invoked by counsel for Johnson, it is not necessary to determine at this time whether or not those statutes were adopted as the law of this state.

We conclude that the escape involved in this action was a negligent escape; that the defendants are liable therefor; that Johnson is entitled to recover only those damages that he has sustained; that prima facie the amount of his damages is the amount of his judgment against Roll, but that the defendants are entitled to prove, if they can, Roll's poverty or insolvency in mitigation of damages. They offered such proof at the trial, but the court sustained an objection to the offer. In excluding the offered evidence, the court committed reversible error.

The judgment is reversed, and the cause is remanded for a new trial on the question of the amount of damages.

Mr. Chief Justice Adams concurs in the result.