JOSEPH PALUMBO, JR. *v.* JOHN R. MANSON,
COMMISSIONER OF CORRECTION, ET AL.

SUPERIOR COURT    JUDICIAL DISTRICT OF    FILE NO. 225817
HARTFORD-NEW BRITAIN AT HARTFORD

Memorandum filed March 29, 1979

*Peter J. Zaccagnino,* for the plaintiff.

*Carl R. Ajello,* attorney general, and *Cornelius F. Tuohy,* assistant attorney general, for the defendant John R. Manson.

*Everett F. Fink* and *Philip P. Apter,* for the defendant Elaine Carol Summers.

SATTER, J. In this habeas corpus proceeding the plaintiff seeks his release from custody in the Hartford County Correctional Center after serving twelve days. He was originally confined on the levy of a body execution issued pursuant to § 52-369 of the General Statutes. The execution, dated November 11, 1978, addressed to the sheriff of Hartford County or one of his deputies, states that Elaine Carol Summers has recovered a judgment against the plaintiff for $12,357.70 for damages and costs,

directs the sheriff to levy on the goods or lands of the plaintiff to satisfy the judgment debt and sheriff's fees, and, for want of such goods of the plaintiff, commands the sheriff "to take the body of said Joseph Palumbo, Jr. and commit him onto the Community Correctional Center administrator." The execution was signed by the assistant court clerk and ordered by a Superior Court judge after a hearing before the judge.

The judgment in favor of Summers against the plaintiff derives from a particularly vicious sexual assault. The decision in this proceeding does not, however, turn on the cause of action giving rise to the civil judgment but, rather, turns solely upon the constitutionality of General Statutes § 52-369, as applied in this case, which permits a body execution for the nonpayment of a judgment debt. Although the plaintiff in his writ of habeas corpus attacks § 52-369[1] on a number of constitutional grounds, this court has focused on the equal protection clause of the fourteenth amendment to the United States constitution and on a similar clause in article first, § 20, of the Connecticut constitution.

The issue of the constitutionality of this precise statute was considered by a three-judge panel of the United States District Court in *Abbit* v. *Bernier*, 387 F. Sup. 57 (D. Conn.), and found by that court to be unconstitutional. Although the courts of this state give "due respect" to decisions of the United States District Court, such decisions are not con-

[1] Section 52-369 provides, in part, as follows: "If personal estate of the debtor sufficient to satisfy the debt and charges cannot be found, and the creditor does not agree to take the debtor's lands, the officer shall levy the execution on the body of the debtor, unless exempt by law from imprisonment on such execution, and commit him to a community correctional center in the county in which the execution is being levied, where he shall remain until he pays the debt and the lawful fees and charges, or is discharged in due course of law. . . ."

clusive as to the constitutionality of Connecticut law. *State* v. *Menillo,* 171 Conn. 141, 146. Moreover, Connecticut courts "will strive to interpret a statute so as to sustain its validity . . . ." *State* v. *Menillo,* supra, 145.

The District Court in *Abbit* rested its decision that § 52-369 "facially" violates the equal protection clause on the two United States Supreme Court cases of *Williams* v. *Illinois,* 399 U.S. 235, and *Tate* v. *Short,* 401 U.S. 395. *Williams* involved the constitutionality of keeping a person in prison beyond the maximum term set by statute for the particular offense by reason of his inability to pay a fine included in his sentence, and *Tate* involved the constitutionality of jailing a person for his failure to pay a fine until he satisfied the fine at a prescribed rate per day. In both cases the United States Supreme Court held that imprisoning a person under such situations "worked invidious discrimination solely because he was too poor to pay a fine, and therefore violated the Equal Protection Clause." *Tate* v. *Short,* supra, 397. The constitutional principle of condemning imprisonment "solely because of . . . indigency"; *Tate* v. *Short,* supra, 398; expressed in those cases involving criminal offenses, applies with even greater force in this case involving the nonpayment of a civil judgment.

*Abbit,* however, recognized that there is an obvious cure to the denial of equal protection inherent in § 52-369, that is, to "provide hearings prior to incarceration to determine a debtor's ability to pay the judgment debt." *Abbit* v. *Bernier,* 387 F. Sup. 57, 62 (D. Conn.). The District Court observed that § 52-369 does not expressly require a preincarceration hearing and found that the Connecticut courts did not require such a hearing, and that is the second cornerstone of its conclusion that § 52-369 is facially unconstitutional.

The *Abbit* court's finding as to the practice of the Connecticut court is incorrect. In fact, the Connecticut procedure is to require a court hearing before a court clerk will issue a body execution. More specifically, in the habeas corpus proceeding before this court, an assistant Superior Court clerk for Hartford County testified that the regular practice is to hold such a hearing. A hearing was held before a Superior Court judge prior to the issuance of the body execution against the plaintiff. Such a practice cures the facial unconstitutionality of § 52-369. The Connecticut Supreme Court noted in *State* v. *Sul,* 146 Conn. 78, 81: "A statute may operate in a manner consistent with constitutional requirements when applied to one set of circumstances, although as to another it may produce a result which makes its operation unconstitutional."

A question legitimately arises, however, as to the meaningfulness of that hearing on the issue of the plaintiff's ability to pay the judgment debt. No evidence was adduced at the hearing on that issue. The reason is that the *Abbit* case is confusing on whether the judgment creditor or the judgment debtor has the burden of proof on the indigency issue. At one point in the *Abbit* case the District Court stated (p. 62) that proof as to the lack of a debtor's capacity to pay the debt is essential to the constitutionality of § 52-369, implying that that proof must be presented by the judgment creditor. At another point the District Court approved (p. 62 n.10) the procedure in § 53-304 of the General Statutes which provides that a person may be imprisoned for nonsupport of close relatives unless that person "shows to the court" that "he is unable to furnish such support. . . ." At another point the District Court, in its generous attempt to advise the state how to redraft § 52-369 so as to render it constitutional, specifically declared (pp. 62–63 n.12) that "unless the judgment

creditor could prove . . . that the debtor was con-
cealing property in the state or had frustrated the
judgment by secreting property beyond the juris-
diction, body execution would not lie." Stephenson,
Conn. Civ. Proc. (2d Ed.) § 217, interprets *Abbit* to
impose the burden of proof on the judgment
creditor.

As a consequence the attorney who represented
the plaintiff at the time of the preincarceration hear-
ing testified at this habeas corpus proceeding that
he had specifically refrained at that hearing from
introducing evidence on the plaintiff's indigency
because he had relied upon *Abbit* to the effect that
he did not have the burden of proof. The attorney
for the judgment creditor guessed that the District
Court was wrong in requiring the judgment creditor
to prove the judgment debtor's indigency. Both
counsel were drawn off-course in their trial strategy
by *Abbit*.

This court determines that at a hearing on the
issuance of a body execution, after the judgment
debtor has been given due notice and has counsel,
the judgment debtor has the burden to prove his
lack of funds to pay the judgment debt and that it
is not a violation of due process to require him to
do so. If he wishes to avail himself of the defense
of indigency, there is no affront to fair play to
require him to establish the defense by evidence
clearly within his knowledge. The burden should
not fall on the judgment creditor to establish the
negative predicate that the judgment debtor lacks
funds.[2]

---

[2] In this regard § 52-369 must be distinguished from § 52-279,
which in turn refers to § 52-562, which permits a body attachment
prior to judgment or a body execution after judgment in a tort action
when the aggrieved creditor institutes an action against and proves
the defendant guilty of fraud in contracting a debt, or concealing,
removing or conveying away assets to avoid the assets being taken
by legal process.

In this case because both the judgment creditor (Elaine Carol Summers) and the judgment debtor (the plaintiff) were misled by *Abbit,* there was no meaningful preincarceration hearing on the issue of the plaintiff's ability to pay the judgment debt. Moreover, the Superior Court judge at that hearing never made a finding on this critical issue.

In the habeas corpus proceeding this court required the indigency issue to be litigated. After hearing the parties, the court concludes that, in fact, the plaintiff did not prior to being jailed and does not now have the assets or the funds sufficient to pay the judgment debt. As a consequence, keeping him in jail would violate the equal protection clause of both the federal and state constitutions.

A word should be added about the provisions of the Connecticut statutes (§§ 18-56—18-58) which permit a debtor to be released from jail on taking a poor debtor's oath. The petitioner chose in this case not to avail himself of those statutes because they do not provide an adequate remedy. He chose instead to bring this habeas corpus proceeding for his immediate release. Section 18-56 provides that the oath will not be administered until four days after the application is filed with a Superior Court judge and a hearing is held on the application. Section 18-56 further provides that the judgment debtor cannot even then be released from jail if the creditor gives to the jailer "immediate notice in writing that he intends within fifteen days thereafter, inclusive, to apply for a review, and deposits with the jailer such sum of money for a weekly maintenance as the community correctional center administrator may require in such cases." Thus even taking the poor debtor's oath can result in a substantial incarceration. Habeas corpus is a more efficacious remedy and in this case is justified.

Based on the foregoing this court concludes that the plaintiff was jailed solely by reason of his indigency and his jailing is, as a result, unconstitutional. His release from custody is hereby ordered.