Tomiko A. KINSEY, Plaintiff–Appellee,

v.

Robert E. PREESON,
Defendant–Appellant.

No. 85SA429.

Supreme Court of Colorado,
En Banc.

Nov. 30, 1987.

As Modified on Denial of Rehearing
Dec. 21, 1987.

Prendergast & Prendergast, Paul Prendergast, M. Evan Sweet, Lakewood, for plaintiff-appellee.

Eugene Deikman, P.C., Craig A. Murdock, Denver, for defendant-appellant.

VOLLACK, Justice.

The defendant, Robert E. Preeson (the defendant or Preeson), appeals the judgment of the Jefferson County District Court awarding the plaintiff, Tomiko A. Kinsey (the plaintiff or Kinsey), compensatory damages, exemplary damages, attorney fees, and an execution against the body of the defendant pursuant to section 13–59–103, 6A C.R.S. (1987). The trial court directed the defendant to be imprisoned for up to one year or until payment of the judgment. The defendant retained new counsel for the purposes of this appeal.

He appealed this judgment claiming that the body execution statute, sections 13–59–101 to –105, is unconstitutional.[1] He also contends that the plaintiff's pleadings were legally insufficient to support the award of body execution and punitive damages, that the trial court's findings to support the award of body execution and punitive damages were insufficient, and that the trial court erred in awarding the plaintiff attorney fees.

The defendant appealed the judgment to the court of appeals. Due to the constitutional challenge to sections 13–59–101 to –105,[2] jurisdiction was transferred to this court pursuant to section 13–4–110, 6A C.R.S. (1987).

We hold that the body execution statute, specifically section 13–59–103, does not provide a rational basis for achieving its purpose, and thus violates equal protection of the law. Further, the award of attorney fees was improper because the trial court did not make sufficient findings to justify the award. However, the award of punitive damages is supported by sufficient evidence. Therefore, we affirm in part, reverse in part, and remand the case to the trial court for further proceedings.

### I.

The dispute between the parties arose out of a contract in which the plaintiff Kinsey agreed to give the defendant $7,500 with the understanding that the defendant would invest the money in a corporation which he was to form to engage in the motor home rental business. Preeson drafted the contract in the form of a letter addressed to Kinsey, dated October 19, 1981, stating that he would form a Delaware corporation to be known as "Chief Motorhome Rentals, Inc." and issue Kinsey five percent of the corporate stock for $7,500. He then stated his intention of traveling to Europe to secure reservations through the media and commercial travel brokers, sending Kinsey weekly progress reports, and sending Kinsey ten percent of the income generated from the business on a monthly basis until Kinsey's initial investment was paid off.

In November 1983, with no return on her investment forthcoming, Kinsey brought the underlying action alleging two claims for relief: a claim for breach of contract and a claim alleging fraud, deceit, and false representation on the part of the defendant.

Initially, Preeson proceeded pro se and filed a letter with the court requesting a continuance to enable him to obtain counsel. The continuance was granted and after the defendant obtained counsel, an answer was filed. The answer alleged that the plaintiff's complaint was "legally insufficient." The answer also alleged that the plaintiff assumed the risks involved in the business venture and that any damages suffered by the plaintiff resulted from her own negligent and willful conduct.

The case proceeded to trial by the court. Both parties submitted "Proposed Pre-trial Orders" setting forth the issues to be tried. Evidently no pre-trial conference was held and the trial court did not sign a trial data certificate pursuant to C.R.C.P. 121, § 1–18.[3] The trial court found in favor of the plaintiff. The court found that Kinsey was an unsophisticated investor with a limited knowledge of the English language, having been raised and educated in Okinawa. The court found that the defendant induced Kinsey to invest in his corporation, which he failed to form, and that he failed to perform any of the terms of the contract. The trial court ruled that the contract was not only breached but that the defendant acted fraudulently and intentionally to misrepresent his purposes for ob-

---

1. The defendant also challenged the constitutionality of C.R.C.P. 101(a) which contained similar provisions to section 13–59–103. C.R.C.P. 101 was repealed May 29, 1986, effective January 1, 1987, thus we will limit our review to the statute.

2. Section 13–4–102(1)(b), 6A C.R.S. (1987), provides that the court of appeals will have initial appellate jurisdiction except in cases in which the constitutionality of a statute is in question.

3. Our knowledge of the proceedings which occurred prior to actual trial is limited due to the absence of a record of pretrial events.

taining Kinsey's money. Further, the court found the defendant's testimony to be incredible. The court awarded compensatory damages of $7,500, punitive damages of $7,500, and, ruling that Preeson's defense was frivolous because a negligence defense is not appropriate to a claim of fraud, awarded attorney fees. Finally, the court awarded Kinsey an execution against the body of the defendant for the amount of the judgment. The court requested the plaintiff to submit a financial affidavit for her claim that pursuant to section 13–59–105, as a poor person, she should not be required to pay for the cost of Preeson's incarceration.[4] The court also requested an affidavit from Kinsey's attorney with regard to attorney fees. The plaintiff's counsel was ordered to prepare the order of judgment. By signed order, the trial court set reasonable attorney fees at $3,306, and set Preeson's term of incarceration at one year or until payment of the judgment.

## II.

Preliminary contentions by the plaintiff must be addressed before we turn to the constitutional aspects of this case. The plaintiff argues that the defendant's notice of appeal was untimely and also that the defendant is precluded from raising a constitutional challenge for the first time on appeal. We disagree.

Under C.A.R. 4, a party has 45 days from the date of the denial of a motion for new trial in which to file an appeal. C.R.C. P. 59 grants a party 15 days from the entry of judgment to file a motion for new trial.

The trial court entered its written order of judgment on November 1, 1984.[5] The defendant filed his motion for new trial, which included a claim that the body execution statute was unconstitutional, on November 16. The motion was denied on December 5, and thus, the defendant had until January 19, 1985 to file an appeal. The defendant's notice of appeal was filed in the court of appeals on January 21, 1985, January 19 of 1985 being a Saturday, and thus was timely under C.A.R. 4.

Second, the plaintiff contends that the defendant cannot challenge the constitutionality of the body execution statute for the first time on appeal. This contention fails for two reasons: (1) the defendant raised his constitutional challenge to sections 13–59–101 to –105 in his motion for new trial; (2) where the issue is of constitutional proportions, we have addressed it even if not properly raised in a motion for new trial. *People In Interest of A.M.D.*, 648 P.2d 625 (Colo.1982); *Robinson v. People*, 173 Colo. 113, 476 P.2d 262 (1970). Here, however, the issue was raised and the trial court ruled that the body execution statute was constitutional. We therefore address the defendant's substantive claims.

## III.

The defendant argues that the body execution statute violates the fourteenth amendment of the United States Constitution and Article II, section 6 of the Colorado Constitution.[6] In point of fact, the appropriate section to equate with the equal

4. The plaintiff points out that the trial court made no findings as to the defendant's economic condition. The record reveals no preincarceration hearing of any kind. At the conclusion of the trial, the court instructed the plaintiff's counsel to draft the written order setting forth the judgment. The term of confinement to prison on the body execution was left blank, to be filled in by the court. Apparently, the court determined the term to be one year, filled in the blank, and mailed the orders to the parties. Thus, the defendant was never given the opportunity to plead his indigency, although there was testimony during the trial that the defendant was "broke."

5. C.R.C.P. 58 states: "If the court makes an oral ruling from the bench and directs counsel to prepare a written order of judgment, the judgment shall not be entered or be effective until the court signs the written order of judgment."

6. Section 6 states: "Courts of Justice shall be open to every person, and a speedy remedy afforded for every injury to person, property or character; and right and justice should be administered without sale, denial or delay." This provision assures equal access to the courts. *See Torres v. Portillos,* 638 P.2d 274 (Colo.1981). Here, the defendant is not claiming that he was denied access to the courts, but that he was denied equal protection of the law.

protection clause of the federal constitution is section 25 of Article II. "Although the Colorado Constitution does not contain an identical provision, it is well-established that a like guarantee exists within the constitution's due process clause, Colo. Const. Art. II, Sec. 25, and that its substantive application is the same insofar as equal protection analysis is concerned." *Lujan v. Colorado State Bd. of Educ.*, 649 P.2d 1005, 1014 (Colo.1982); *see also Tassian v. People*, 731 P.2d 672 (Colo.1987). We will analyze the defendant's claim within this context, but first we briefly review the history of the body execution statute.

### A.

The origins of body execution are ancient and the concept of imprisonment for debt was long a part of our legal history. R. Ford, *Imprisonment for Debt*, 25 Mich.L. Rev. 24 (1926). The practice of imprisoning debtors had its antecedent in Roman law and continued throughout the evolution of the common law. In colonial America, the law corresponded with the law of England in the matter of civil arrest, so much so that in some states three to five times the number of persons were imprisoned for debt as for crime. *Id.* at 28–29. Reform came in the guise of constitutional and statutory provisions which limited or entirely prohibited imprisonment for debt, and were enacted by the states individually. *See* Note, *Body Attachment and Body Execution: Forgotten But Not Gone*, 17 Wm. & Mary L.Rev. 543, 550–51 n. 45–52 (1976). Some states have no constitutional provisions on the subject, but have enacted statutory limitations, while other states have constitutional provisions to restrict imprisonment for debt. *See* Note, *Imprisonment for Debt: In the Military Tradition*, 80 Yale L.J. 1679, 1679 n. 1 (1971)

(setting forth the state constitutional and statutory citations on the subject of body executions). The United States Constitution provides no express provision against imprisonment for debt, but federal courts are required to follow the law of the state in which they sit. *See* 28 U.S.C. § 2007 (1982).

Body execution statutes are not uniform, but most authorize a body execution whenever a defendant is found guilty of some kind of wrongdoing, such as committing a fraud, or tort, or misconduct in public office or professional employment, or embezzlement or conversion of the plaintiff's property, or where the defendant is about to abscond. A. Freeman, 3 *Law of Executions* § 451, at 2393 (3d ed. 1900). The intent of prohibitions against imprisonment for debt is to exempt from imprisonment the honest debtor who is poor, and unable to pay his or her debts. *Id.* at 2394.

■ The Colorado Constitution contains the following provision:

> **No imprisonment for debt.** No person shall be imprisoned for debt, unless upon refusal to deliver up his estate for the benefit of his creditors in such manner as shall be prescribed by law, or in cases of tort or where there is a strong presumption of fraud.

Colo. Const. art. II, § 12.[7] The language of section 12 is not self-executing, but requires a legislative statute for implementation. *Coryell v. Lawson*, 25 Colo.App. 432, 139 P. 25 (1914). The statutory provision actually predates the adoption of the state constitution and was reenacted after the constitutional convention. *See* Secs. 1–2, 1861 Colo.Terr.Law 67; Ch. 47, § 1351 and ch. 55, §§ 1587–93, 1877 Colo.Gen.Law 506, 573–74.[8] The language of this enactment

---

7. Section 12, as originally proposed by the Committee on the Bill of Rights for the Constitutional Convention, held in 1875–76, read: "That imprisonment for debt shall not be allowed except for the nonpayment of fines and penalties imposed for violation of law." *Proceedings of the Constitutional Convention*, 90 (1907).

8. In *Erisman v. McCarty*, 77 Colo. 289, 236 P. 777 (1925), *overruled on other grounds, Burson v. Adamson*, 87 Colo. 451, 288 P. 623 (1930), the

body execution statute was challenged as unconstitutional because the title did not clearly state the subject of the act. The act's title in 1877 Colo.Gen.Law 573 stated: "To repeal sections 67 and 68 of chapter 50 of the Revised Statutes of Colorado, relative to attachment of the body and issuing executions against the body of a defendant in civil actions, and to enact other provisions in lieu thereof, and to release all persons now under arrest or confined in jails in

has been slightly modified over the years but its substance is virtually unchanged. *See* Ch. 52, §§ 1646–51, 1883 Colo.Gen.Stat. 541, 541–42; Ch. 121, sec. 1, § 3024, 1921 Colo.Sess.Law 310, 310–11; Ch. 39, secs. 212–13, §§ 77–9–3 to –4, 1964 Colo. Sess.Law 286.

The current body execution statute provides:

### 13–59–103. Body execution in tort, when.

In any civil action in any court of record where it appears from the summons and other papers in the cause that the action is founded upon tort, and upon trial of the case the finding is in favor of the plaintiff, and the verdict of the jury or the finding of the court, if tried without a jury, states that in committing the tort complained of any one or more of the defendants were guilty of either malice, fraud, willful deceit, or negligence consisting of a reckless or willful disregard of the rights or safety of others, then the plaintiff may have execution as provided in this article against the body of any defendant against whom such finding was had or any judgment rendered on any such finding. In no case shall an execution issue against the body of a person when the person had been convicted in a criminal prosecution for the same wrong.

### B.

We recognize that the long history of the body execution statute in Colorado, while not insulating it from constitutional attack, does weigh as a factor in the balance. *Williams v. Illinois,* 399 U.S. 235, 239–40, 90 S.Ct. 2018, 2021–22, 26 L.Ed.2d 586 (1970). Also, legislative enactments are accorded a presumption of validity. *Lujan v. Colorado State Bd. of Educ.,* 649 P.2d 1005 (Colo.1982). With this in mind, we consider the constitutionality of section 13–59–103.

 Equal protection of the law requires that the government treat similarly situated persons in a similar manner, and

that any distinction between groups or classes by a statute have some relevance to the purpose for which the classification is made. *Tassian v. People,* 731 P.2d 672 (Colo.1987); *People v. Mozee,* 723 P.2d 117 (Colo.1986). A statute nondiscriminatory on its face "may be grossly discriminatory in its operation." *Griffin v. Illinois,* 351 U.S. 12, 17 n. 11, 76 S.Ct. 585, 590 n. 11, 100 L.Ed. 891 (1956). The presumption of validity of a statute would disappear if the statute impacted on a fundamental right or a suspect class. *Lujan,* 649 P.2d at 1015. If a fundamental right or a suspect class is involved we must apply a "strict scrutiny" analysis, otherwise we apply a "rational basis" test by which we determine whether the statute in question is rationally related to a legitimate state interest. *People v. Turman,* 659 P.2d 1368 (Colo.1983).

The defendant argues that financial status is a suspect classification under equal protection analysis. We have held that "wealth alone is not a suspect classification in Colorado." *Lujan,* 649 P.2d at 1022. *Lujan* addressed the constitutionality of the state's system of financing public schools, and in that case we relied on *San Antonio Independent School District v. Rodriguez,* 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973), to find that wealth in public school finance cases is not a suspect classification. *Lujan,* 649 P.2d at 1019. In *People v. Turman,* we again rejected wealth as a suspect classification in considering whether a criminal defendant had a constitutional right to good-time credit. We held that the withholding of good-time credit was not the withholding of a fundamental right because "[l]awful imprisonment necessarily makes unavailable many rights and privileges of the ordinary citizen, a 'retraction justified by the considerations underlying our penal system.'" 659 P.2d at 1371 (quoting *Wolff v. McDonnell,* 418 U.S. 539, 555, 94 S.Ct. 2963, 2974, 41 L.Ed.2d 935 (1974).

However, in *Lujan* we noted that the wealth criterion, when used in school finance systems, "differs fundamentally from situations where, due to their inability

virtue of such process issued in civil actions."

We rejected the challenge.

to pay, indigents are totally excluded either from participation in institutions or from exercising their rights." 649 P.2d at 1020. *See Franklin v. District Court*, 194 Colo. 189, 571 P.2d 1072 (1977) (right to have blood test in paternity action cannot be denied an indigent defendant without violating equal protection).

■ In our view, it is unnecessary for us to determine whether the imprisonment resulting from an execution against the body of the defendant affects a fundamental right in personal liberty or whether a suspect class is involved because we find that under the "rational basis" test the statute is unconstitutional.[9]

### C.

The body execution statute "is highly penal in its nature, as it contemplates imprisonment for debt." *Coryell v. Lawson*, 25 Colo.App. at 435, 139 P. at 27. *Accord Jones v. District Court*, 196 Colo. 261, 584 P.2d 81 (1978). "The purpose of the body execution is to coerce the payment of the judgment by keeping the defendant in confinement for the prescribed time, unless he pays the judgment before the expiration of that time." *Hershey v. People*, 91 Colo. 113, 116, 12 P.2d 345, 346 (1932). In *Hershey*, we held that a judgment debtor committed to jail cannot be paroled before payment of the judgment or the expiration of the term of confinement because

> [t]o release him from prison on parole would defeat, or tend to defeat, that purpose.... Payment, and that alone, en-

titles such person to a release before the expiration of the time of confinement fixed by the court. The body execution act was passed for the benefit of the execution creditor; ... he is entitled to have the defendant detained in prison for the full time specified in the judgment, unless before the expiration of that time the defendant pays the judgment.

*Id.* at 116, 12 P.2d at 346–47. This professed purpose can only be effected if the defendant, in fact, has the ability to pay the judgment in the first place.

Courts and commentators have noted the plight of the indigent defendant against whom a body judgment has been executed. *E.g., Abbit v. Bernier*, 387 F.Supp. 57 (D.Conn.1974) (ruling Connecticut's body execution statute violative of the fourteenth amendment right to equal protection); *Palumbo v. Manson*, 35 Conn.Sup. 130, 400 A.2d 288 (1979) (holding the Connecticut body execution statute facially constitutional but ruling the imprisonment of the debtor unconstitutional in this particular case, the court stated that constitutional principle, applied in criminal cases, condemning imprisonment based solely on defendant's indigency, applies with even greater force in civil cases);[10] *Landrigan v. McElroy*, 457 A.2d 1056 (R.I.1983) (body execution provision allowing ex parte motion execution, thus precluding a preincarceration hearing to determine debtor's ability to pay, invidiously discriminates against the indigent debtor).[11] *See also, Body At-*

---

9. In *Landrigan v. McElroy*, 457 A.2d 1056 (R.I. 1983), the Rhode Island Supreme Court considered the constitutionality of that state's body execution statute. The court rejected the "strict scrutiny" test, stating that the decisions of *Williams v. Illinois*, 399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970), and *Tate v. Short*, 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130 (1971), were not based upon strict scrutiny but should be interpreted "as establishing that a state violates the equal-protection clause under any analytical standard when it incarcerates citizens solely because of their economic status." 457 A.2d at 1061. In *People v. Turman* we found that the *Williams* and *Tate* decisions were based on a classic "rational basis" test. 659 P.2d at 1372.

10. The *Palumbo* court disagreed with the suggestion made by the federal court in *Abbit v.*

*Bernier*, 387 F.Supp. 57, 62 (D.Conn.1974) that the Connecticut body execution statute was facially unconstitutional. *Palumbo* upheld the statute but found that in this particular case, the judgment debtor's incarceration was unconstitutional because it was based solely on his indigency. 400 A.2d at 291. The Connecticut Legislature later repealed the body execution statute. Sec. 14, 1981 Conn.Acts 81–410, 718. At the same time, the Connecticut "poor debtor's oath," which allowed an indigent debtor to plead his indigency and be released from jail, was also repealed.

11. The *Landrigan* court's holding was limited to striking down that part of the body execution statute which implicitly excluded a preincarceration hearing to determine the judgment debtor's ability to pay. Rhode Island had a "poor

*tachment,* 17 Wm. & Mary L.Rev. 543 ("consistent with the equal protection clause, a separate hearing to determine the defendant's ability to pay is necessary to avoid imprisonment by reason of indigency." *Id.* at 570); S. Chapman, *Vermont's Close Jail Execution: Physical Incarceration of the Wilful and Malicious Tortfeasor,* 3 Vt.L.Rev. 165 (1978) (concluding that Vermont's close jail execution for tort statute violated the due process and equal protection clauses);[12] Note, *Present Status of Execution Against The Body of the Judgment Debtor,* 42 Iowa L.Rev. 306 (1957) (questions whether purpose of coercing satisfaction of judgment by imprisoning judgment debtor can be achieved when debtor financially incapable).

In *Boyer v. Elkins,* 154 Colo. 294, 390 P.2d 460, *appeal dismissed,* 379 U.S. 47, 85 S.Ct. 208, 13 L.Ed.2d 183 (1964), defendants subject to body judgment argued that the body judgment section deprived them of equal protection under the law where they had been tried and acquitted in a criminal case based on the assault that was the subject of the underlying civil action. The defendants argued that the distinction made in the statute between a person criminally convicted for the same wrong, and thus immune from body judgment, and a person acquitted of the wrong, and not immune, violated equal protection.[13] We held the classification reasonable because "[t]he person who has been convicted and presumably punished by infliction of the penalty imposed by law, cannot be required to suffer a second 'punishment' under the

law governing execution against the body in civil actions." *Id.* at 304, 390 P.2d at 465.

In the case of the indigent judgment debtor, there is no provision in the statute to prevent an indigent debtor from suffering a 'punishment' not visited upon the debtor of means. Under prior case law, it is clear that imprisonment as a result of a body judgment does not discharge the debt. *In re Thompson,* 104 Colo. 171, 89 P.2d 538 (1939). Thus, an indigent judgment debtor will suffer imprisonment based soley on an involuntary inability to pay the judgment and still owe the entire amount of the judgment after serving time in jail. Imprisoning an indigent debtor will not serve the coercive purpose of the body execution statute. In fact, jailing the indigent debtor defeats the purpose of obtaining payment for the judgment creditor by precluding gainful employment during the period of incarceration.

In *Williams v. Illinois,* 399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970), and *Tate v. Short,* 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130 (1971), the United States Supreme Court struck down statutes which subjected indigents to incarceration solely because of their inability to pay a fine. These cases are analogous to the case before us where an indigent judgment debtor is incarcerated while those of greater means have the keys to the jail.[14]

In *Williams v. Illinois,* the Supreme Court reviewed a state criminal statute which permitted the trial court to sentence

debtor's oath" statute which allowed an indigent debtor to obtain release from imprisonment, although a debtor on a tort judgment could not obtain release by taking the oath until after six months. Colorado has no "poor debtor's oath." In addition, we reject the limited nature of the *Landrigan* holding because the body execution statute is highly penal in its nature, and thus must be strictly construed. *Fanstiel v. Wright,* 122 Colo. 451, 222 P.2d 1001 (1950).

**12.** The Vermont close jail execution statute was repealed in 1979. No. 67, sec. 9, § 3624, 1979 Vt. Laws 214. At the same time the Vermont Legislature enacted section 3521 of Title 12 which provides in part: "No person shall be arrested or imprisoned on an execution or by other means to enforce a judgment in any civil

action for money damages." No. 67, sec. 1, § 3521, 1979 Vt.Laws 206.

**13.** Section 13–59–103 states in pertinent part: "In no case shall an execution issue against the body of a person when the person has been convicted in a criminal prosecution for the same wrong."

**14.** The holdings of *Williams* and *Tate* were approved in *Bearden v. Georgia,* 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983), where the Court considered "whether and when it is fundamentally unfair or arbitrary for the State to revoke probation when an indigent is unable to pay the fine." *Id.* at 666, 103 S.Ct. at 2069. This rephrases the question in terms of due process.

a defendant to imprisonment plus a fine. In the event the defendant defaulted on payment of the fine the defendant was required to remain in jail to "work off" the monetary obligations at the rate of $5 per day. 399 U.S. at 236, 90 S.Ct. at 2020. The traditional justification for this default imprisonment was its use as a coercive device to obtain payment of the fine and that additional imprisonment could always be avoided by payment of the fine. The Court held that the default imprisonment resulted directly from an involuntary non-payment of a fine or court costs and was "impermissible discrimination that rests on ability to pay...." *Id.* at 241, 90 S.Ct. at 2022.

*Tate v. Short,* 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130 (1971), involved a Texas statute in which criminal offenses were punishable by fines alone, except when the defendant did not pay the fine, in which case imprisonment resulted. The Court stated that the Texas statute "cannot, consistently with the Equal Protection Clause, limit the punishment to payment of the fine if one is able to pay for it, yet convert the fine into a prison term for an indigent defendant without the means to pay his fine. Imprisonment in such a case is not imposed to further any penal objective of the State." *Id.* at 399, 91 S.Ct. at 671.

Section 13–59–103, like the statutes in *Williams* and *Tate,* does not distinguish between defendants on the basis of ability to pay the judgment, but seemingly extends to all defendants "an apparently equal opportunity for limiting confinement ... by satisfying a monetary judgment. In fact, this is an illusory choice for ... any indigent who, by definition, is without funds." *Williams,* 399 U.S. at 242, 90 S.Ct. at 2023. The purpose of the body execution statute, to coerce a judgment debtor into paying the judgment, cannot be effected against an indigent debtor. The only real effect of the body execution against an indigent debtor is that of punishment. Such a punishment can be avoided by a solvent debtor but becomes mandatory against an indigent debtor. Thus, the body execution statute is invidiously discriminatory and unconstitutional under the fourteenth amendment. Therefore, we reverse the award of execution against the body of the defendant.

## IV.

The defendant next contends that the award for punitive damages was improper because the claim of fraud was not properly before the trial court and the trial court failed to make findings that the defendant committed fraud beyond a reasonable doubt as required by section 13–25–127, 6A C.R.S. (1987).[15]

First, the defendant claims that Kinsey's complaint was insufficient to allege fraud as required by C.R.C.P. 9(b), which states, "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." The "particularity" required by C.R.C.P. 9(b) includes all of the material elements of an action in fraud. *Coon v. District Court,* 161 Colo. 211, 420 P.2d 827 (1966). These elements include: (1) a false representation of a material existing fact; (2) knowledge on the part of the one making the representation that it is false; (3) ignorance on the part of the one to whom the representation is made of the falsity; (4) representation made with intention that it be acted upon; (5) representation resulting in damage. *Trimble v. City and County of Denver,* 697 P.2d 716 (Colo. 1985); *Morrison v. Goodspeed,* 100 Colo. 470, 68 P.2d 458 (1937). We note that the record before us does not contain any pretrial proceedings which may have occurred.

**15.** Section 13–25–127(2) states in pertinent part: Exemplary damages against the party against whom the claim is asserted shall only be awarded in a civil action when the party asserting the claim proves beyond a reasonable doubt the commission of a wrong under the circumstances set forth in section 13–21–102. Section 13–21–102 allows exemplary damages where "the injury complained of is attended by circumstances of fraud, malice, or willful and wanton conduct...."

However, on the face of the plaintiff's complaint the elements of fraud are sufficiently set forth.

█ The defendant suggests that the issue of fraud was not properly before the court because representations about the future are not actionable. This is an incorrect statement of the law. "A promise concerning a future act, when coupled with a present intention not to fulfill the promise, can be a misrepresentation which is actionable as fraud." *Stalos v. Booras*, 34 Colo.App. 252, 256, 528 P.2d 254, 256 (1974). In the case at bar, the trial court found that the defendant "acted fraudulently and intentionally to misrepresent the purpose of his trip [to Europe] for the purpose of getting this money, ... it appears to me to be nothing but a con game...." We find that the claim of fraud was properly before the court.

The defendant also contends that the trial court did not find beyond a reasonable doubt that he committed fraud. We disagree.

In its oral ruling, the trial court stated: The court would further find from the testimony of the parties here that the lack of any documentation to support anything that Defendant has said, that the Defendant's testimony is incredible. I can't believe a word of it.

The defendant places considerable emphasis upon the fact that the written order of judgment, drafted by plaintiff's counsel and signed by the trial court, did not contain a finding "beyond a reasonable doubt" that the defendant acted fraudulently. In the record, the original document of the findings and order contains the "beyond a reasonable doubt" language written in by hand and initialed by the trial judge. No date is given to show that this addition was made after the judge signed the order, but such is the defendant's contention.

█ We consider it unnecessary to engage in appellate factual determinations here. We find the trial court's oral ruling

as quoted above sufficient to meet the burden of proof required by section 13–25–127. The evidence in this case primarily consists of testimony by the plaintiff and the defendant, and the trial court is in the best position to weigh credibility. Therefore, we affirm the award of punitive damages.

### V.

The defendant appeals from the award of attorney fees, contending that his defense to the action was not frivolous and the trial court did not make the necessary findings required by section 13–17–101, 6 C.R.S. (1983 Supp.).[16] The defendant also asserts that the trial court erred by entering a ruling on attorney fees on the basis of an affidavit of the plaintiff's attorney, without affording the defendant a hearing on the matter.

Section 13–17–101(3) provides for the award of attorney fees when the court finds "that the bringing, maintaining, or defense of the action against the party entitled to such award was frivolous or groundless. The court must make findings either affirmative or negative as to the matters set forth in this subsection (3)."

The determination of whether attorney fees will be awarded and in what amount is an exercise of judicial discretion. *See* § 13–17–102, 6 C.R.S. (1983 Supp.). "A claim or defense is frivolous if the proponent can present no rational argument based on the evidence or law in support of that claim or defense." *Western United Realty, Inc. v. Isaacs*, 679 P.2d 1063, 1069 (Colo.1984). *See Board of County Comm'rs v. Auslaender*, 745 P.2d 999, (Colo.1987). Here, the trial court held "[t]hat the defendant's answer in this action indicates a [sic] answer asserting a Negligence Defense, pled in a Contract Action and the same is inappropriate."

█ A party requesting an award of attorney fees bears the burden of proving by a preponderance of the evidence its en-

---

**16.** Sections 13–17–101 to –106 were amended effective July 1, 1984, to apply to actions commenced on or after the effective date. Ch. 107, secs. 1–8, §§ 13–17–101 to –106, 1984 Colo. Sess.Law 460, 460–62. Since the instant case was commenced before the effective date, we apply the provisions of sections 13–17–101 to –106 as existing prior to July 1, 1984.

titlement to such an award. *Board of County Comm'rs v. Auslaender*, at 1001–1002. *See* § 13–25–127, 6A C.R.S. (1987). A trial court is "obliged to make findings that will permit meaningful appellate review" of the attorney fees award. *Auslaender*, at 1001. Section 13–17–102, 6 C.R.S. (1983 Supp.) sets forth factors to consider in determining whether to award attorney fees:

(a) In the case of parties claiming adversely to a person entitled to attorney fees under section 13–17–101(1), the extent of any efforts made to determine the truth of such adverse claim before making such claim or during pretrial proceedings or both;

(b) The extent to which a party has made available facts to indicate his nonliability for any money damages;

(c) *The financial conditions of the parties;*

(d) That a particular party has prosecuted or defended the case in bad faith or abused the procedures set forth in the Colorado rules of civil procedure;

(e) Whether there were issues of fact determinative of such person's liability concerning which evidence was in conflict.

(Emphasis added.)

▮ The trial court did not err in finding that a defense of negligence was inappropriate to a claim of fraud. *Cf. Zimmerman v. Loose*, 162 Colo. 80, 425 P.2d 803 (1967). However, the record of this case reveals that the focus of Preeson's defense at trial was that he did not misrepresent material facts to Kinsey, that she was aware of the risks and that he made a good faith effort to fulfill his obligations under the contract but failed in the attempt. The trial court made it clear that it did not believe a word the defendant uttered in his defense. However, the trial court did not consider the factors set forth in section 13–17–102. As is evident in Part II, the trial court never considered the financial condition of the defendant. *See* § 13–17–102(1)(c). Nor did the trial court consider whether Preeson's defense at trial, namely that he attempted to perform

the contract but failed, was frivolous or groundless. The court's decision was based solely on the negligence defense contained in the answer.

We find the trial court's findings as to the award of attorney fees insufficient. In addition, the defendant, while given notice in the pleadings that attorney fees were requested, did not have an opportunity to challenge the reasonableness of the amount of the award because the trial court based its award on an affidavit submitted by Kinsey's counsel after the trial. Therefore, we find that the award of attorney fees was not proper. Additional facts under section 13–17–102 must be considered before the court can make the determination required by section 13–17–101(3).

Accordingly, we affirm the award of punitive damages assessed against the defendant and reverse the award of an execution against the body of the defendant and the award of attorney fees. We remand to the trial court for further proceedings, as to attorney fees, consistent with this opinion.

ROVIRA, J., does not participate.