The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Leroy M. GARDENHIRE, III,
Defendant–Appellant.

No. 93CA0221.

Colorado Court of Appeals,
Division IV.

Feb. 9, 1995.

Rehearing Denied March 23, 1995.

Certiorari Denied Oct. 10, 1995.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., John J. Krause, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Nora V. Kelly, Denver, for defendant-appellant.

Opinion by Judge NEY.

Defendant, Leroy Gardenhire III, appeals the judgment entered on a jury verdict finding him guilty of one count of first degree murder, one count of second degree murder, two counts of first degree kidnapping, one count of second degree assault, and crime of violence. We affirm.

Prior to trial, defendant moved to sever his case from that of his father, co-defendant, Leroy Gardenhire, Jr. The trial court denied the motion and defendants' joint trial was held in January 1993.

During jury selection, a prospective juror informed the court that she had been exposed to a media report about events in another case which gave her concern. The court spoke with the juror and learned that she had mentioned the report to other women on the jury panel.

The court recalled the panel and explained the juror's exposure to the media report. The court asked if any member of the panel had concerns that he or she wished to discuss in chambers. There was no response to the court's inquiry. The court did not poll the panel.

Pursuant to § 16–10–104, C.R.S. (1986 Repl.Vol. 8A) and § 16–10–105, C.R.S. (1994 Cum.Supp.), because there were two defendants and two alternate jurors impaneled, the court granted fifteen peremptory challenges to each side. After exercising one peremptory challenge jointly, the defendants could not agree as to the remaining challenges. In response, the trial court permitted each defendant to exercise seven challenges independently.

After the parties exercised their peremptory challenges, the trial court concluded it might have improperly refused a defense challenge for cause, and to cure that possible error, it granted the prosecution and each defendant one additional peremptory challenge. Both defendants exercised all the permitted peremptory challenges.

I

PEREMPTORY CHALLENGES

A

Defendant contends that § 16–10–104 is unconstitutional as applied to defendants

who are tried jointly because it denies such defendants their right to equal protection. Defendant reasons that the statute operates to deny equal protection to defendants who are tried jointly because each co-defendant does not receive as many peremptory challenges as he would if he were tried separately. However, we perceive no denial of equal protection of the law.

■ A statute is presumed to be constitutional. Section 2–4–201(1)(a), C.R.S. (1980 Repl.Vol. 1B). A party asserting the unconstitutionality of any statute has the burden of proving such assertion beyond a reasonable doubt. *People v. Wilhelm,* 676 P.2d 702, 705 (Colo.1984). *Dempsey v. Romer,* 825 P.2d 44 (Colo.1992).

■ Peremptory challenges are not constitutionally required. *People v. Hollis,* 670 P.2d 441 (Colo.App.1983). Therefore, they must be taken with limitations attendant upon the manner of their exercise. *People v. Durre,* 713 P.2d 1344 (Colo.App.1985).

■ Equal protection of the law requires that, unless a fundamental right or a suspect class is involved, any statutory distinction between groups or classes of persons must bear a rational relationship to the purpose for which the classification is made. *Kinsey v. Preeson,* 746 P.2d 542 (Colo.1987).

■ However, to prove a violation of equal protection rights, it is not enough for a party to show that the General Assembly has made a distinction between different classes of people. Unless the party proves that the distinction is arbitrary or unreasonable, the distinction will be upheld. *People v. Childs,* 199 Colo. 436, 610 P.2d 101 (1980).

As the defendant does not have a fundamental constitutional right to a specific number of peremptory challenges, § 16–10–104(1), C.R.S. (1986 Repl.Vol. 8A) is presumed to be constitutionally valid, and we must determine, therefore, if the statute is rationally related to a legitimate state interest. *See Kinsey v. Preeson, supra.*

We recognize that the statutory number of peremptory challenges to which criminal defendants jointly tried are entitled varies from that to which a single defendant is entitled.

However, this legislative scheme reflects the General Assembly's attempt to equalize the number of peremptory challenges allotted to each side in a criminal case in which defendants are jointly tried. Thus, we conclude that the distinction created by the General Assembly is rationally related to a legitimate state interest.

Accordingly, the defendant has failed to prove beyond a reasonable doubt that § 16–10–104, C.R.S. (1986 Repl.Vol. 8A) is unconstitutional as applied to defendants jointly tried. *See People v. King,* 240 Cal.App.2d 389, 49 Cal.Rptr. 562, *cert. den'd, King v. California,* 385 U.S. 923, 87 S.Ct. 236, 17 L.Ed.2d 146 (1966); *State v. Persinger,* 62 Wash.2d 362, 382 P.2d 497 (1963), *cert. den'd, Persinger v. Washington,* 376 U.S. 187, 84 S.Ct. 638, 11 L.Ed.2d 603 (1964).

### B

■ Defendant contends that the trial court committed reversible error by refusing to provide additional peremptory challenges to be exercised independently by defendant. We disagree.

Section 16–10–104(1) provides that, in capital cases in which there is one defendant, the state and the defendant are each entitled to ten peremptory challenges. The statute further provides that, if there is more than one defendant, each side is to be entitled to an additional three peremptory challenges for each defendant after the first. If alternate jurors are impaneled, each side is entitled to one peremptory challenge for each alternate to be selected. Section 16–10–105, C.R.S. (1994 Cum.Supp.); Crim.P. 24(e). The exercise of peremptory challenges by multiple defendants is to be made and considered as the joint peremptory challenge of all defendants. Section 16–10–104(1).

Defendant maintains that the court committed reversible error by determining that he was entitled to seven peremptory challenges to be exercised individually. According to defendant's reading of § 16–10–104, defendant was entitled to twelve peremptory challenges to be exercised independently.

However, the court calculated the number of peremptory challenges in accordance with

the applicable statute and rule. Therefore, its refusal to allocate twelve peremptory challenges to the defendant was not an abuse of discretion.

The court acted within its discretion by allocating seven peremptory challenges to be exercised independently by each defendant. There being no statutory guidance as to how to proceed if defendants cannot agree on the exercise of their peremptory challenges, the court chose an appropriate course of action.

Crim.P. 24(d)(3) provides that the court may, at any time, for good cause shown, *add* peremptory challenges to either or both sides. *People v. Heller*, 698 P.2d 1357 (Colo. App.1984), *rev'd on other grounds, Heller v. People*, 712 P.2d 1023 (Colo.1986).

The court did not determine that the defendants' difficulty in exercising their peremptory challenges jointly constituted good cause shown for purposes of Crim.P. 24(d)(3). Nor did has defendant indicated any prejudice in obtaining a fair and impartial jury. Therefore, we find no abuse of discretion and will not disturb the decision of the trial court on appeal.

II

SEVERANCE

■ Defendant contends that the trial court's refusal to grant his motion to sever violated § 16–7–101, C.R.S. (1986 Repl.Vol. 8A) and deprived him of his right to a fair trial. We disagree.

■ Under § 16–7–101, a criminal defendant is entitled to severance as a matter of right "if there is evidence which is admissible against one but not all of the parties and that evidence is prejudicial to the defendant against whom the evidence is not admissible." *People v. Lesney*, 855 P.2d 1364, 1366 (Colo.1993).

■ A motion to sever which is not based on a mandatory ground for severance is addressed to the sound discretion of the trial court, and the denial of such motion will not be overturned absent a showing that the denial was an abuse of discretion which re-

sulted in prejudice to the defendant. *People v. Durre, supra.*

One of the grounds for defendant's motion to sever was co-defendant's statement to the police in defendant's presence that, if the police did not find the person who had allegedly stolen his car, then he and defendant would take care of the matter in their own way. The trial court concluded that the statement was made by a co-conspirator during the course of and in furtherance of the conspiracy and was, therefore, admissible against defendant.

■ The acts and statements of one conspirator are admissible against all conspirators "if such are done during the existence [of] and in furtherance of the conspiracy." *Reed v. People*, 156 Colo. 450, 456, 402 P.2d 68, 71 (1965). This rule of admissibility applies whether the defendants are formally charged with conspiracy or whether conspiracy is developed by the evidence. *See McClain v. People*, 111 Colo. 271, 141 P.2d 685 (1943).

Defendant argues that the trial court erred in deciding that defendant was a conspirator as there was no evidence that the defendants had reached an agreement to perform an illegal act.

There is evidence in the record to support the trial court's conclusion that co-defendant's remarks to the police were admissible as the statements of a co-conspirator and as an adoptive admission by defendant. Alternatively, even if co-defendant's remarks were not admissible on these grounds, they were admissible on other grounds.

■ Admissible evidence is not rendered inadmissible because a trial court relied on an inappropriate rule of evidence. *People v. Quintana*, 882 P.2d 1366 (Colo.1994).

There is no dispute that. defendant was present when co-defendant told the police that he and his son were going to look for the car thief and that the thief "had better hope that the police find him before they do." Thus, defendant was aware of his father's desire to seek retribution. Viewing this fact in conjunction with defendant's subsequent participation in regaining possession of the car, we conclude that co-defendant's state-

ments to the police are admissible as probative of defendant's state of mind when he agreed to help father retrieve his car.

Hence, as co-defendant's statements to the police, made in defendant's presence, are admissible against defendant, he is not entitled to severance as a matter of right under § 16–7–101. Furthermore, under the circumstances, the trial court did not abuse its discretion by refusing to sever defendant's trial.

We also conclude that the trial court did not commit reversible error in admitting co-defendant's statement that he was a drug dealer and that he carried a gun for protection during drug transactions.

■ The court gave at least two cautionary instructions during the co-defendant's testimony informing the jury that co-defendant's statements about drug dealing should be considered only for the purpose of understanding the factual background of the case. Although the preferred instruction would have been to inform the jury that the co-defendant's testimony could not be used against the defendant in any way, the instruction given by the trial court did not constitute reversible error.

■ Absent some showing to the contrary, it is presumed that a jury understood and heeded a trial court's instructions. *People v. Atkins*, 844 P.2d 1196 (Colo.App.1992).

The defendant has not shown that the jury misunderstood or disregarded the trial court's instructions. Accordingly, we reject the defendant's contention that the cautionary instructions given by the court were insufficient to prevent prejudice to the defendant.

Because we conclude that the trial court's denial of defendant's motion for severance did not constitute reversible error in light of the cautionary instructions given by the court, we are not persuaded by defendant's assertion that he was deprived of his right to a fair trial. Defendant has not brought to our attention any evidence in the record which would suggest otherwise.

## III

### IMPROPER PEREMPTORY

■ Defendant contends that the court committed reversible error and violated the defendant's right to equal protection when it denied defendant's challenge of the prosecutor's alleged striking of potential jurors on racial grounds. We disagree.

■ To establish a prima facie case of purposeful discrimination in selection of a jury solely on evidence concerning the prosecutor's exercise of peremptory challenges, a defendant must first show that he is a member of a cognizable racial group. *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Next, the defendant must show that the prosecutor has exercised peremptory challenges to remove potential jurors from the venire on account of their race. *See People v. Cerrone*, 854 P.2d 178 (Colo.1993). Finally, the defendant must show that the relevant facts and circumstances of the case raise an inference that the prosecutor used that practice to exclude a member or members of the venire on account of their race. *Batson v. Kentucky, supra*.

■ Since resolution of a *Batson* challenge largely turns on evaluating credibility, a reviewing court should exercise great deference with regards to a trial court's decision on such a challenge. *Batson v. Kentucky, supra*.

The court's denial of the defendant's *Batson* challenge did not violate the defendant's right of equal protection. The record supports the trial court's conclusion that the defendant failed to make a prima facie showing of intentional discrimination. For instance, the defendant did not present facts which create an inference of discrimination based on the prosecutor's pattern of excluding black members of the venire. Nor did the defendant direct our attention to any of the prosecutor's questions and statements during *voir dire* that would support or refute an inference of discriminatory purpose.

Alternatively, even if we were to assume that defendant made a prima facie showing of discriminatory selection of the venire, the

state was able to come forward with a neutral explanation for challenging a member of the venire.

 In response to a *Batson* challenge, it is not necessary for the state's explanation to rise to the level justifying exercise of a challenge for cause. Instead, the state must merely articulate a neutral explanation which is related to the particular case being tried. *Batson v. Kentucky, supra.* This standard was met here.

## IV

## PUBLICITY

 Defendant contends that the trial court erred in refusing to poll the jury panel regarding exposure to allegedly prejudicial publicity. We disagree.

 The proper procedure for addressing allegations of prejudicial publicity during trial is set forth in *Harper v. People,* 817 P.2d 77 (Colo.1991). The court must first determine if the media coverage has a potential for unfair prejudice. In making this determination, the court should focus upon whether the content of the media report is inherently prejudicial. Second, the court must canvass the jurors to find out if they have learned of the potentially prejudicial publicity. Third, the court must "examine individually exposed jurors—outside the presence of other jurors—to ascertain how much they know of the distracting publicity and what effect, if any, it has had on the juror's ability to decide the case fairly." *Harper v. People, supra,* at 83.

 The trial court has broad discretion to determine if the media report prejudiced the defendant's right to a fair trial. *See Harper v. People, supra.*

We conclude that the trial court's decision not to poll the jury did not constitute an abuse of discretion. First, the media report to which one of the prospective jurors was exposed did not concern the defendant's case. As there is no indication that it was inherently prejudicial, the court's inquiry of the jury panel as a group was sufficient. Second, the trial court had no reason to believe that a poll of the jury panel would be helpful be-

cause none of the members of the panel accepted the court's offer to discuss the matter in chambers.

The judgment of conviction is affirmed.

PLANK and RULAND, JJ., concur.